**UNITED STATES of America, Plaintiff,**

v.

**Fred W. MUSSEHL, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**Joel E. SKAAR, Defendant.**

**Nos. C78–1007, C78–1008.**

United States District Court,
D. North Dakota,
Southwestern Division.

July 5, 1978.

**1236**

James S. Hill, Asst. U. S. Atty., Bismarck, N. D., Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Irvin B. Nodland, Bismarck, N. D., for defendant.

VAN SICKLE, District Judge.

## MEMORANDUM AND ORDER

The matter before this Court is a carefully worded motion to dismiss two separate informations charging the individual Defendants with violations of Title 26, United States Code, Section 7205, in that they wilfully filed false and fraudulent W4 forms required by Title 26, United States Code, Section 3402. The Defendants are tax protestors, and their cases were joined for trial to a jury.

Before going into the facts I state two general principles which dominate my reasoning:

1. The Court does have the duty, imposed by its oath, to "administer justice." 28 U.S.C. § 543. In performing this duty the Court may, in the exercise of its sound judicial discretion dismiss, with prejudice, a criminal charge. This obligation to dismiss with prejudice does not arise under Rule 29 or Rule 48 of the Federal Rules of Criminal Procedure, and it is not found in explicit statutory or constitutional language. The duty arises under the inherent power of a district court "to do justice." *U. S. v. Dooling,* 406 F.2d 192 (2d Cir., 1969), cert. den. 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224, rehearing den. 400 U.S. 874. Its exercise is justified only under the most extreme circumstances. The duty encompasses the concept of review of the question whether the United States Attorney, in making his decision to prosecute, complied with the law, but does not allow the Court to question a United States Attorney's judgment decision to prosecute, when lawfully made. *U. S. v. De Diego,* 167 U.S.App.D.C. 252, 511 F.2d 818 (1975). But the duty is more fundamental than an authority to review. I believe this principle to be consistent with the declaration of the Eighth Circuit Court of Appeals in *U. S. v. Whitted,* 454 F.2d 642, at p. 644 (1972).

2. As Plato's Socratic dialogue would suggest, "justice" encompasses not one, but many concepts. But for the trial judge, justice is a way—not a result. For example, in any general civil damage case when on the facts the plaintiff prevails, any one of many dollar amounts would be acceptable as a just verdict. If justice were simply a result only one verdict—one amount—would be just. This concept, like any broad declaration, tends to crumble at the edges when it wears against other meanings of justice. A decision which is completely contrary to uncontroverted facts should not be allowed to stand on the strength of this principle. But still, for the trial judge at least, justice is a way rather than a precise result.

From these two principles I conclude that the carefully developed motion to dismiss requires my consideration on the merits, and my tests should be addressed to the fairness of the trial as it unfolded, step by step. I conclude also that I must consider the separate incidents, and the sum of those incidents.

Since the case went to verdict, there are available for consideration:

a. The demonstrated competence of retained counsel.

b. Seriousness of the charges.

c. Time required for trial and cost of trial.

d. Strength of the evidence upon which the jury based its verdicts.

e. Evidence of internal stress on the part of the jury, such as extended consideration, demeanor of the jury when verdicts received, and the results of a jury poll.

f. Factors of unreasonable hardship to the Defendants, such as excessive expense and prolonged exposure which would be a byproduct of an order denying dismissal, or directing a retrial.

g. Any other evidence which will assist me to evaluate the fairness of the trial in total balance.

In my consideration the factors of strength of the evidence, competence of counsel, and seriousness of the charges will carry considerable weight. Factors of time necessary for trial and cost of trial will have minor importance; factors of hardship to the Defendants will be important.

The case was tried June 12 through 15, 1978. It began on a sour note.

After the jury panel was interrogated on voir dire, the Court asked counsel at the bench for additional questions pursuant to Rule VIII E. of the Local Rules of this Court, and Rule 24(a) of the Federal Rules of Criminal Procedure. Local Rule VIII E. provides that:

"The Judge alone shall examine all jurors on the voir dire. If either counsel desire that the Judge examine as to additional matters, counsel shall inform the Court of his request in a manner designated by the presiding Judge, and if the matter be proper in his opinion, the Judge shall further examine jurors in respect thereof."

At that bench conference the Court saw for the first time the newspaper article which appears in the record as Court Exhibit 1. The article is a bad example of inexcusable discussion by an Assistant United States Attorney which went to the merits of the case claimed to be provable, and even went to the punishment that would be recommended under the privilege granted the Government under Rule 32(a)(1) of the Federal Rules of Criminal Procedure. It was a clear case of violation of Local Rule XXIX (Fair Trial—Free Press Directive). The Court interrogated the jurors specifically concerning their exposure to the article, and after the jury was sworn, sequestered the jury for lunch while the Court tested the jurors' claims that they had not been exposed to the article.

The article was locally run in the Bismarck Tribune on Saturday, June 10 (jury selection was on the following Monday). Eight of the thirteen jurors sworn were from outside the Bismarck-Mandan area. Therefore, this issue of the Bismarck Tribune ordinarily would not have been available to them by the time they departed for Bismarck on Monday morning. As to the other five jurors they, like the Court, reasonably could have missed the Saturday newspaper because the weekend weather was excellent and afforded a chance to engage in outside activities. Therefore, the Court concluded that the jurors had more likely than not answered the voir dire questions truthfully. With the consent of all counsel the sequestration was lifted; and by Court order the trial went forward.

The next series of problems arose over a motion by the defense for sequestration of witnesses under Rule 615 of the Federal Rules of Evidence. The order of witness sequestration required that all witnesses:

a. not talk with other witnesses about the case during the trial, and

b. not remain in the courtroom either before or after they had testified.

Despite the imposition of the rule and the assurance by the Assistant United States Attorney that the witnesses had been informed of the strictures imposed, two Government witnesses—both clerical employees of the Internal Revenue Service—after completing their testimony returned to the courtroom and had to be ordered to leave by the Court. Then at noon the same two witnesses conferred publicly, in a restaurant in the view of some of the jurors, with a third, principal Government witness who was an investigator for the Internal Revenue Service. The Court verified the incident in chambers and was satisfied that there had been no discussion concerning the facts of the case. After directing the Assistant United States Attorney to instill in the Government witnesses some capacity for judgment and decorum, the Court directed the trial to go on. Then a principal

Government witness (the Internal Revenue Service investigator above referred to) testified; and on cross-examination it was developed that this witness, despite the strictures of sequestration, had sat in the courtroom through the whole first day of testimony. This time the Court ordered that the entire testimony of the witness be stricken and emphatically admonished the jury to totally disregard that witness' testimony.

Each time that the opportunity arose under these facts, counsel for the Defendants moved for a judgment of dismissal under the Court's inherent power to do justice. Counsel is an experienced criminal trial lawyer who obviously was not going to entrap his clients in a waiver of the Fifth Amendment protection against double jeopardy. For that reason by no act or omission did he suggest or concur in a possible order for mistrial as an adequate remedy.

At the same time, as the trial progressed, the defense position was not bad. The United States presented as evidence protest tax returns which had attached to them the whole tax protest argument which the defense could not otherwise have brought to the jury's attention. See: *United States v. Rifen,* 577 F.2d 1111, (8 Cir., 1978), and *United States v. Pryor,* 574 F.2d 440, (8 Cir., 1978), and Rule 401, Federal Rules of Evidence. And the jury had witnessed and heard the Court exclude the witness for the Government, and strike his testimony.

The Defendants made good appearances on the witness stand and although they recognized that they had deliberately filed false W4 forms, they sought to justify the filing by the transient nature of their employment, temporary financial shortages and a desire—having been convicted recently of the same offenses—to get their case presented so that an effective appeal could be developed.

The defense argument to the jury was excellent and attentively listened to by the jury. Counsel did all he could with the state of facts which confronted him. In a low key, carefully organized address, he grounded his argument on familiar excerpts from "Through the Looking Glass," exploited the material which was before the jury as attachments to the protest tax returns, and pictured his clients as courageous dissenters who acted with glorious historical precedent, and from noble motives which transcended an intent to do an act forbidden by law.

The case was delivered to the jury and, while sequestered, the jury was sent to lunch shortly after noon. Upon the jury's return the bailiff informed the Court that during the meal a juror had inquired concerning the effect of a "yes" answer to the question "Are any such charges now pending against you?" (referring to a state or federal crime punishable by imprisonment for more than one year) which appeared on a juror information card sent out by the Clerk. The Court thereupon directed that further investigation be made. The Clerk's records disclosed that when the juror responded to the information card sent to him early this year, he had truthfully answered 1) that he had not been convicted of a state or federal crime punishable by imprisonment for more than one year, and 2) that such a charge was then pending against him. (In fact, the juror had been convicted in a state court of general jurisdiction on a felony charge (theft of property) just three days before he reported for jury duty in this Court. Imposition of sentence was deferred and the juror placed on probation.)

In view of the disclosure that a felony charge was pending against him, the juror was not qualified to sit and should have been excused. 28 U.S.C. § 1865(b)(5). Nevertheless, the office of the Clerk failed to catch the disclosure and remove his name from the panel. The Court's general voir dire had not gone to the specific question, nor had general questions as to participation in criminal trials and disclosures of other information touching on juror qualifications elicited the disclosure. Nor had counsel for either side requested more detailed questioning on the point at the conclusion of the general voir dire.

Nevertheless, I find that the failure of the Clerk to withdraw this particular

juror out of the panel is a plain and obvious cause for declaration of a mistrial. *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 6 L.Ed.2d 901.

After investigation of the matter, and at about 1:45 P.M., counsel and the Defendants were called into chambers and the results of the investigation were fully disclosed. The United States offered no motions, and the defense offered again a carefully worded motion for a dismissal of the informations.

The motion to dismiss was taken under advisement to await the jury verdict. At about 4:00 P.M. the jury came in with guilty verdicts as to both Defendants on all counts.

Counsel for the Defendants has now renewed all of his prior motions to dismiss, presenting them in writing as a single motion to dismiss for all of the reasons previously advanced.

I find that by electing not to request a remedy after the juror disqualification was disclosed, the United States elected to waive the defect and be bound by the verdict. By electing not to move for a mistrial, and whether acting from a desire to protect Fifth Amendment rights or acting from a decision to accept the verdict rather than assume the burdens of a new trial or acting to protect the Defendant's valued right to have this trial heard by a particular tribunal, *Arizona et al., v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 777, 1978, the Defendants have waived any privilege they may have to the remedy of retrial.

Previously I found that failure to remove the disqualified juror from the panel was a plain and obvious cause for declaration of a mistrial, citing *Gori,* supra. The problem is discussed in 76 Am.Jur.2d § 1084, and Hunter, *Federal Trial Handbook,* § 82.2 and § 82.3.

■ Since a plain and obvious cause to declare a mistrial existed, it follows that a motion by the defense to declare a mistrial would not be a waiver of Fifth Amendment privileges, because on the facts justifying the mistrial, a grant of mistrial would not have raised the Fifth Amendment bar to retrial. *Gori,* supra. Also see: *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267.

■ This leaves the question of whether, under the second principle recited above, these cases should be dismissed with prejudice to further prosecution on the same facts.

The four days of trial and the added expense to the Government are not sufficiently onerous to justify a dismissal.

The increased burden on the Defendants, while it deserves serious consideration, could not effectively justify a dismissal unless the issue is very nearly at balance.

As pointed out in my recital of the course of trial, the Defendants have received excellent representation by criminal trial counsel of high competence. Counsel remained in control of the situation at all times. His courtroom demeanor was of the highest standard. He forced the Court to rule on critical issues. He attacked every weakness of the prosecution as it surfaced. He had a plan of battle which he carried out and he exploited at every turn the rules of law and procedure available to him.

The evidence against the Defendants was overwhelming. The Government sought to prove that the Defendants falsely stated that they had no income tax liability in the year stated in the information. It did so as to each of the three separate charges by introducing as exhibits executed income tax returns which showed tax liability.

The Government further sought to prove that the Defendants falsely stated that they did not anticipate incurring income tax liability during the current year stated in the information. It did so by showing that the W4 forms were in each case filed after the Defendants had earned sufficient money so that despite their exemptions and their pattern of deductions, they already had incurred a tax liability for the current year.

The Government also sought to prove that the Defendants acted wilfully. It did so by showing that each Defendant had been convicted of the same offense within a

few months before he committed the instant offenses. In fact, each of the Defendants testified on his direct examination that he did the acts complained of wilfully.

The overwhelming nature of the evidence was clearly reflected in the conduct of the jury. It was out only from about 12:30 P.M. to 4:00 P.M., with an hour off for lunch. It made no request for additional or clarifying instructions. After disclosure of the verdict there was no evident strain or difficulty involved in their answers to the poll of the jury.

From all of these factors considered separately and together, I conclude that the Defendants have received a fair trial and that the verdicts must stand.

The motion to dismiss is, in all things, denied.