**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1032
_____

UNITED STATES OF AMERICA

v.

ILMA ALEXANDRA SORIANO NUNEZ, also known as M.D.C.R.R.,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 5-18-cr-00040-001)
District Judge: Hon. Joseph F. Leeson, Jr.
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 1, 2020

Before: SHWARTZ, PHIPPS, and FISHER, *Circuit Judges*.

(Filed: November 2, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

In 1997, Ilma Alexandra Soriano Nunez, a native and citizen of the Dominican Republic, entered the United States without admission or parole to live with her aunt and uncle in Puerto Rico. She later moved to New York and lived with her husband, also a native of the Dominican Republic. They moved to Allentown, Pennsylvania, where they raised two children, who are now teenagers.

In building that life, however, Nunez relied on fraud. In 1997, while in Puerto Rico, she applied for and received a United States passport using a photograph of herself but another person's name, date of birth, and social security number. Nunez renewed that passport in 2007 and, with her false status as a United States citizen, sponsored her husband for naturalization and obtained a Pennsylvania driver's license. In 2016, the person whose personal information Nunez had misappropriated applied for a passport, prompting an investigation into passport fraud. In 2017, Nunez again attempted to renew the passport, and in 2018, a federal grand jury indicted her on four counts. *See generally* 18 U.S.C. § 3231 (granting district courts original jurisdiction over "all offenses against the laws of the United States"). Those counts were (i) passport fraud, *see* 18 U.S.C. § 1542; (ii) false representation of United States citizenship, *see* 18 U.S.C. § 911; (iii) Social Security fraud, *see* 42 U.S.C. § 408(a)(7)(B); and (iv) production of false identifying documents, *see* 18 U.S.C. §§ 1028(a)(1), (b)(1)(A), and (b)(2); *see also* 18 U.S.C. § 2(a) (aiding and abetting). The day after the indictment, which was her fortieth birthday, Nunez was arrested, and she attended her initial appearance.

2

A few days later, Nunez returned to court for a detention hearing. Following that hearing and consistent with the Bail Reform Act, *see* 18 U.S.C. § 3142(d), a Magistrate Judge ordered Nunez temporarily detained for ten days. That detention afforded Immigration and Customs Enforcement an opportunity to take Nunez into custody pending removal proceedings. Within those ten days, ICE lodged an immigration detainer against Nunez but did not take her into custody. After that ten-day period had expired, a Magistrate Judge held another hearing and ordered Nunez's pretrial release subject to several conditions. The prosecutor disputed that ruling, but a District Judge upheld it and ordered Nunez's pretrial release. The next day, ICE executed its detainer and took Nunez into custody pending her removal proceeding.

Nunez challenged the legality of her ICE detention. According to Nunez, the Bail Reform Act allowed the government the duration of her temporary detention – but no longer – to choose to detain her pending removal proceedings. Because ICE did not take her into custody during that period but did so afterwards, Nunez moved to dismiss the indictment and sought release from ICE custody. The District Court denied her requests to dismiss and for release, and Nunez filed an immediate appeal.

This Court resolved Nunez's interlocutory appeal in a precedential opinion. *See United States v. Nunez*, 928 F.3d 240 (3d Cir. 2019). As that opinion explained, the denial of Nunez's motion to dismiss the indictment was not a final judgment within this Court's appellate jurisdiction. *Id.* at 243–44. By statute, however, the District Court's order denying Nunez's request for release from detention could be immediately appealed. *See* 18 U.S.C. § 3145(c); *see also Nunez*, 928 F.3d at 244. In addressing that issue, this

Court held that ICE could execute its detainer against Nunez beyond the ten-day period of her temporary detention. *Nunez*, 928 F.3d at 247.

With that resolution of Nunez's interlocutory appeal, the criminal case against her proceeded. Nunez entered an open guilty plea to all four counts, and the District Court sentenced her to prison for a year and a day followed by a three-year term of supervised release.[1]

In this appeal, Nunez renews her challenge to the indictment based on her detention by ICE, and she disputes two components of her sentence – the term of imprisonment and the imposition of supervised release after her sentence. In exercising jurisdiction over those three challenges to a final judgment and sentence, *see* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a), we will affirm for the reasons below.

I.

Nunez leads with the argument that her criminal indictment should be dismissed. As she sees it, dismissal of the indictment would remedy her detention by ICE after the expiration of her ten-day temporary detention. No relevant statute or rule provides such relief in this circumstance, and therefore to dismiss the indictment would require resort to a court's inherent powers. *See United States v. Serubo*, 604 F.2d 807, 816–17 (3d Cir.

---

[1] During the criminal case, the removal proceedings against Nunez continued as well. Before her guilty plea in District Court, the Immigration Court ordered Nunez's removal to the Dominican Republic and denied her request for cancellation of removal. *See Nunez v. Att'y Gen. of U.S.*, 804 F. App'x 184, 186–87 (3d Cir. 2020) (not precedential). Nunez administratively appealed those rulings to the Board of Immigration Appeals, and the Board affirmed the Immigration Court. *Id.* at 187. Nunez then sought review of the Board's decision, and a panel of this Court denied her petition. *Id.* at 189.

1979); *cf.* Fed. R. Crim P. 48(b) (permitting dismissal of an indictment on different grounds). By precedent, a court may exercise its inherent powers to dismiss an indictment "only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019) (citations omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion." (citation omitted)).

Nunez's effort fails at the outset because the government did not engage in misconduct. For perspective, Nunez makes no claim of any misconduct regarding the prosecution of her criminal case. Rather, the wrongful action she alleges is ICE's execution of a detainer following her release from temporary custody. Putting aside the deeper question of whether a court's inherent powers could ever permit remedying *immigration*-related misconduct through dismissal of a *criminal* indictment, ICE did not engage in wrongful conduct here. At the time it executed its detainer, no law prohibited that conduct, and this Circuit subsequently held that ICE can detain a deportable alien after her release from temporary custody under the Bail Reform Act. *Nunez*, 928 F.3d at 247. At the time, that holding did not apply to Nunez's motion to dismiss the indictment because Nunez had prematurely appealed, leaving this Court without appellate jurisdiction over that issue. But now that this appeal comes within this Court's jurisdiction, Nunez cannot escape the binding nature of that holding, which also carries force as law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (explaining the doctrine of law of the case as "when a court decides upon a

5

rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)).  In short, under *Nunez* it was permissible for ICE to detain Nunez after the expiration of her temporary detention under the Bail Reform Act, and that forecloses the relief she now seeks.

## II.

Nunez next challenges the length of her year-and-a-day prison sentence.  In determining the term of incarceration, the District Court grouped three of her fraud offenses together under Sentencing Guideline § 3D1.2(b).  It explained that those offenses of passport fraud, social security fraud, and production of false identifying documents were part of a common scheme or plan related to immigration.  But the District Court separated out the fourth offense, reasoning that the fraudulent driver's license application was not part of a scheme related to immigration because it enabled Nunez to "carry out everyday functions while in the United States."  Sentencing Tr. 10 at lines 19–20 (JA88).  By separating out the fourth offense, the calculation of her sentence under the Guidelines included a multiple-count adjustment, and that resulted in a prison term of ten to sixteen months.  If the District Court had instead grouped all the offenses together as part of the same common scheme, then the range for Nunez's sentence under the Guidelines would have been six to twelve months.  She complains because the sentence she received from separating the offenses exceeded by one day the twelve-month upper limit that would have resulted if the offenses had all been grouped.

In reviewing the District Court's calculation for clear error – because Nunez preserved an objection to the grouping – we affirm the length of Nunez's prison term.

6

*See United States v. Griswold*, 57 F.3d 291, 295 (3d Cir. 1995) ("[A] determination of whether various offenses are part of one overall scheme is essentially a factual issue which we review under a clearly erroneous standard." (citation omitted)). Under the Guidelines, "counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. One of the ways that counts can involve "substantially the same harm" is by implicating "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." *Id.* § 3D1.2(b). As explained in the commentary to the Guidelines, immigration offenses are often grouped together:

> Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related.

*Id.* § 3D1.2 cmt. n.2. The District Court's grouping of Counts One through Three comports with that commentary. Each of those offenses related to fraud associated with an immigration document. But Count Four involved fraud related to the issuance of a Pennsylvania driver's license. The District Court's conclusion that a driver's license serves a different purpose than the immigration documents is not clearly erroneous and will be upheld.

III.

Nunez also challenges, for the first time on appeal, her three-year term of supervised release. Under the Sentencing Guidelines, supervised release is generally not appropriate for an alien subject to a deportation order. *See* U.S.S.G. § 5D1.1(c). But

7

supervised release for deportable alien is permissible "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1 cmt. n.5. For a district court to impose a term of supervised release on a deportable alien, it "must state the reasons in open court for imposing a [term of supervised release on a deportable immigrant] so that the appellate court is not left to speculate about the reasons." *United States v. Azcona-Polanco*, 865 F.3d 148, 153 (3d Cir. 2017) (quoting *United States v. Albertson*, 645 F.3d 191, 200 (3d Cir. 2011)).

In reviewing Nunez's challenge for plain error, the District Court did not err. *See United States v. Flores-Mejia*, 759 F.3d 253, 254–55 (3d Cir. 2014) (en banc). Before explaining its rationale for imposing supervised release, the District Court mentioned the presumption against supervised release for a deportable alien and considered Nunez's ties to the community. It also accounted for Nunez's husband, two children, and other family and friends in the United States, finding that those ties would increase the likelihood that Nunez would attempt to reenter the United States upon removal. Ultimately, the District Court concluded that "supervised release is appropriate because of the length of the defendant's deception and to provide an added measure of deterrence to not commit future crimes." Sentencing Tr. 28, lines 20–23 (JA106). On this record, Nunez fails to establish any error, much less plain error, related to the imposition of supervised release.

\* \* \*

For the foregoing reasons, we will affirm both the District Court's order denying Nunez's motion to dismiss the indictment and Nunez's sentence.