**UNITED STATES of America**

v.

**Jorge GARCIA, a/k/a/ "Toton," Wasang Tomas Mock, a/k/a "Chino," and Raul Rodriguez, a/k/a "Raulin," a/k/a "El Morenito," Defendants.**

**No. S2 90 Cr. 890 (PKL).**

United States District Court,
S.D. New York.

Dec. 16, 1991.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, (Nancy Northup, of counsel), for U.S.

Philip R. Edelbaum, New York City, for defendant Jorge Garcia.

Richard Tannenbaum, New York City, for defendant Raul Rodriguez.

Addabbo & Greenberg, Forest Hills, N.Y. (Todd D. Greenberg, of counsel), for defendant Wasang Tomas Mock.

## OPINION AND ORDER

LEISURE, District Judge.

In this criminal case, the defendants, Jorge Garcia ("Garcia"), Raul Rodriguez ("Rodriguez") and Wasang Tomas Mock ("Mock"), are charged in the second superseding indictment ("indictment") with conspiracy to possess and distribute narcotics, and with use of a gun in relation to drug trafficking. Defendant Mock now moves the Court for relief concerning statements he made on July 30, 1991, at the first trial of this action, before the Hon. Mary Johnson Lowe, United States District Judge of this Court. Defendants Garcia and Rodriguez also move the Court, seeking a finding that double jeopardy bars their retrial and dismissal of their indictment in the exercise of the Court's supervisory powers. In addition, all of the defendants move the Court to sever the perjury counts against Mock from the trial of the other offenses. For the following reasons, the defendants' various motions are denied in their entirety.[1]

## BACKGROUND

The first indictment in this case was filed on December 18, 1990, and charged Garcia, Rodriguez and Pedro Henriquez Valdez ("Valdez") with conspiracy to possess with

---

1. Oral argument on these motions was heard by this Judge on December 4 & 5, 1991. The Court also held an evidentiary hearing on December 4 with respect to Mock's motion to suppress evidence seized during a search of his apartment on July 30, 1991. Although defendant's wife, Lillian Mock, testified credibly in part at the hearing, the Court held that the totality of the circumstances indicated that Mrs. Mock had consented to the search of the apartment, and Mock's suppression motion was denied. For the reasons stated at the hearing, the Court also denied defendants' motion for further discovery and for a bill of particulars. Further, the Court postponed for consideration during the trial whether evidence of Mock's prior conviction will be admissible under Fed.R.Evid. 404(b), consistent with the teaching of *United States v. Colon*, 880 F.2d 650, 656–58 (2d Cir.1989).

intent to distribute over 50 grams of crack, possession of over 50 grams of crack and over 500 grams of cocaine and the use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 846. Valdez entered into a cooperation agreement, pleading guilty to the conspiracy and firearm counts on March 20, 1991, in return for his testimony against Garcia and Rodriguez. A superseding indictment was filed on April 25, 1991, and a trial against Garcia and Rodriguez began on July 23, 1991, before Judge Lowe ("first trial"). The trial ended in a mistrial on August 2, 1991, when Judge Lowe discharged the jury, which was deadlocked 11–1 for acquittal, after two days of deliberations. The case was reassigned to this Judge on September 20, 1991.

During the first trial, on July 30, 1991, after the government rested, the defense called Mock as its first witness. At this time, the government approached the bench and asked for the jury to be excused, so that agents could execute an arrest warrant for Mock, which had been issued on May 24, 1991, relating to the same drug distribution conspiracy at issue in the first trial. The defense objected to execution of the warrant before Mock testified, because "if they execute it now, you will be depriving the defendant of a defense." Trial Transcript ("Transcript"), at 354. Judge Lowe excused the jury, the government went to seek advice from the Appeals Unit of the U.S. Attorney's office and the discussion was adjourned to the robing room.

After discussions in the robing room, Judge Lowe arranged for a deputy U.S. marshal to be posted outside the courtroom so that Mock could be arrested after testifying. Accordingly, Mock testified and was cross-examined without the benefit of counsel and without being informed that he was going to be arrested. *See* Transcript, at 360 (statement of Judge Lowe) ("I don't want [Mock] to be aware of the arrest warrant or any arrest take place [sic] before he has completed his testimony so as not to deprive the defendants of the benefit of his testimony.... [When] he finishes his testimony he will leave the courtroom,

and if you could execute the arrest warrant outside of the courtroom as soon as he leaves.").

Nevertheless, Mock was clearly on notice that he had been implicated in the conspiracy at issue, and that his appearance in court posed the danger of arrest. In the robing room, counsel to Garcia and Rodriguez represented that they had told Mock and two other unindicted co-conspirators that "they might subject themselves to arrest if they come to court." Transcript, at 357. In fact, Richard Tannenbaum, Esq. ("Tannenbaum"), counsel for Rodriguez, represented that he had told Mock "to get an attorney." *Id.* The following questions by Philip R. Edelbaum, Esq. ("Edelbaum"), and responses from Mock at the trial lend further support to the conclusion that Mock was aware of his situation when he testified:

> Q. You know from reading the minutes that Mr. Valdez claimed that you were a partner in the drug business with Jorge Garcia?
>
> A. Yes, sir.
>
> Q. Did anybody tell you whether or not there was a chance you might be arrested if you came to testify in court?
>
> A. Well, there is always the chance because I was afraid of my permanent [sic] that I had back in 1984 because just he says something I could be in trouble, but I just wanted to clear my name.

Transcript, at 409–10.

## DISCUSSION

I. *Motions Relating to Mock Testimony at First Trial*

The Court first turns to the considerations raised by Mock arising out of his testimony at the first trial. Mock claims that his rights under the fifth, sixth and fourteenth amendments were violated by the manner in which his testimony was procured. He therefore seeks suppression of this testimony.

A. Suppression of Statements under Sixth Amendment

█ Mock begins by asserting that his testimony at the first trial violated his

rights under the sixth amendment. He contends that adversary judicial proceedings against him had been initiated at the time he testified, by the filing of a complaint and the issuance of an arrest warrant. He therefore asserts that his right to counsel under the sixth amendment had attached, and that statements made by him without the assistance of counsel must be suppressed. In response, the government argues that adversary judicial proceedings had not commenced at the time of the first trial, and that no sixth amendment rights had attached.

Under *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the sixth amendment right to counsel attaches "after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *See United States v. Yu-Leung*, 910 F.2d 33, 39 (2d Cir.1990) (citing examples of "critical stages" marking initiation of adversary proceedings). Further, the Second Circuit has found that the filing of a complaint and issuance of an arrest warrant do not constitute adversary judicial proceedings for the purposes of the sixth amendment. *See United States v. Smith*, 778 F.2d 925, 932 (2d Cir.1985) ("sixth amendment right to counsel does not arise at the time of arrest upon a warrant following the filing of a complaint"); *United States v. Duvall*, 537 F.2d 15, 22 (2d Cir.) (Friendly, J.) ("We see no reason in principle why the filing of a complaint should be deemed to give rise to a right to counsel immediately upon arrest pursuant to warrant."), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

It is thus clearly established in the Second Circuit that Mock was not subject to adversary judicial proceedings as a result of the filing of a complaint and issuance of a warrant. Mock also had not been indicted or arraigned, which would have signaled the initiation of adversary judicial proceedings against him. Since no sixth amendment right had attached when Mock testified at trial, there was no violation of his sixth amendment right in testifying at the first trial without the assistance of counsel. Mock's sixth amendment motion is therefore denied.[2]

### B. Suppression under Fifth Amendment

Defendant next contends that his testimony at the first trial violated his fifth amendment rights because he was not given *Miranda* warnings before testifying and because his statements were not voluntarily made. The government responds that Mock was not subject to custodial interrogation at the first trial, and that he testified voluntarily.

#### 1. *Right to Warnings under Miranda*

To raise a violation of one's rights under the fifth amendment, a party must have been compelled to testify after affirmatively raising a "valid claim of the privilege." *Minnesota v. Murphy*, 465 U.S. 420, 427–28, 104 S.Ct. 1136, 1142–43, 79 L.Ed.2d 409 (1984) ("the Court need ask only whether the particular disclosure was 'compelled' within the meaning of the Fifth Amendment"). However, under *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), a party subject to "custodial interrogation" must be warned of his constitutional rights before being questioned. Custodial interrogation and the accompanying protection of *Miranda* are implicated when "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)).

**2.** Mock's sixth amendment motion is apparently joined with a motion under the fourteenth amendment. However, *Maine v. Moulton*, 474 U.S. 159, 168, 106 S.Ct. 477, 483, 88 L.Ed.2d 481 (1985), which Mock cites, relied on the fourteenth amendment because the Court was considering the sixth amendment right to counsel as it applied to the actions of the state of Maine. *See Powell v. Alabama*, 287 U.S. 45, 67–68, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932). The fourteenth amendment due process clause is simply not implicated in the instant case.

In *Alexander v. Connecticut*, 917 F.2d 747, 751 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991), the Second Circuit described custodial interrogation as follows: *"Miranda* 'custodial interrogation' involves two elements. The suspect must be in police custody, and he must be aware that he is being interrogated by government authorities or their representatives." The inquiry into "the custodial quality of an interrogation for *Miranda* purposes ... focuses on whether a reasonable person in the same circumstances would have believed that he was not free to leave." *United States v. Kirsteins,* 906 F.2d 919, 923 (2d Cir.1990); *see Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990) ("Coercion is determined from the perspective of the suspect."); *Berkemer, supra,* 468 U.S. at 442, 104 S.Ct. at 3151 ("the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation").

In the case at bar, it is clear that Mock's *Miranda* rights were not implicated, because he was not subject to custodial interrogation. Judge Lowe was careful to insure that Mock was not in police custody when he testified at the first trial. Further, since Mock claims that he was misled by the Court as to his status, *see* Memorandum of Law of Defendant Wasang Mock ("Mock Motion"), at 17, Mock must have been unaware that he was going to be arrested after testifying. The Court therefore finds that a reasonable person in Mock's situation, who came to court to "clear [his] name," and did not believe that he was going to be arrested, would not have believed himself in custody and subject to those pressures to which *Miranda* and its progeny are responsive. Mock therefore had no right to *Miranda* warnings.

## 2. *Voluntariness of Mock Testimony*

■ Statements which are made voluntarily are not barred by the fifth amendment. Thus, a confession will be admissible over fifth amendment objection if the government proves by a preponderance of the evidence that it was given voluntarily.

*See United States v. Diaz,* 891 F.2d 1057 (2d Cir.1989). Voluntariness is "determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir.1991); *see Campaneria v. Reid,* 891 F.2d 1014 (2d Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991); *Green v. Scully,* 850 F.2d 894, 901 (2d Cir.), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); *United States v. Okwumabua,* 828 F.2d 950 (2d Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). Voluntariness "cannot be taken literally to mean a 'knowing' choice." *Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). Rather, a voluntary statement is " 'the product of an essentially free and unconstrained choice by its maker. . . . where his will has [not] been overborne and his capacity for self-determination [not] critically impaired.' " *Id.* at 225, 93 S.Ct. at 2047 (quoting *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961)).

■ Examining the totality of the circumstances, the Court finds that Mock's statements were made voluntarily, precluding suppression for violation of his fifth amendment rights. Mock is a high school graduate and a former partner in a business. He is 32 years old, and is no stranger to the Federal criminal justice system, having already been tried once and convicted. Mock was not brought into Judge Lowe's courtroom by force or by use of process. Rather, he appeared to testify to "clear my name," despite being warned that there would be DEA agents at the trial and that he had been implicated in the drug conspiracy then on trial.

■ Mock's contention that he did not testify voluntarily focuses primarily on the government's and Court's failure to inform him that he would be arrested after leaving the courtroom. However, a finding of voluntariness does not require a finding that

the defendant acted with full knowledge of the consequences of his actions. *See Schneckloth, supra,* 412 U.S. at 224, 93 S.Ct. at 2046; *see also Oregon v. Elstad,* 470 U.S. 298, 316–17, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985) ("a defendant's ignorance of the full consequences of his decisions [does not] vitiate their voluntariness"). Further, this is not a case like *United States v. Goldstein,* 611 F.Supp. 626, 632 (N.D.Ill.1985), where the government deliberately misled the defendant as to his status. Mock knew he was a suspect in this case. Nevertheless, he voluntarily decided to appear in Court to testify, and the failure to explicitly inform him of the consequences of his actions is not dispositive. Because Mock was not in custody and because he testified voluntarily, his fifth amendment motion is denied.

### C. Suppression for Violation of Mock's Constitutional Riqhts

Relying on *United States v. Colyer,* 571 F.2d 941 (5th Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978), and *United States v. Silverstein,* 732 F.2d 1338 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985), Mock makes another motion to suppress, claiming that "Judge Lowe ... failed to protect the Constitutional Rights of Mr. Mock as a witness." Mock Motion, at 19. However, in *Colyer* the Fifth Circuit found that the trial court had improperly invoked the privilege on behalf of a witness who was willing to answer the question of whether he was homosexual. Although *Colyer* found that a court can warn a witness that he may be entering an area that raises fifth amendment concerns, the case imposed no obligation on the Court to warn a witness that his fifth amendment rights are implicated. *See also Silverstein, supra,* 732 F.2d at 1345. This Court has already decided that Mock's fifth and sixth amendment rights were not violated by his testimony at the first trial, and the cases Mock cites do not change this conclusion. The motion to suppress based on the purported violation of Mock's "Constitutional Rights" is denied.

### II. *Motions Relating to Perjury Counts against Mock*

Counts Five and Six of the Indictment charge Mock with perjuring himself during his testimony at the first trial. Count Five concerns Mock's testimony that he was not a drug dealer, that since 1990 he had not been involved with or in the presence of cocaine and that he had never been to apartment 24 at 615 West 143rd Street. *See* Transcript, at 368, 387–88. Count Six charges that Mock committed perjury by denying that he knows Garcia by the name of "Toton." *See* Transcript, at 396. The Court first considers Mock's assertion that the perjury counts are insufficient as a matter of law. Next, the Court addresses Mock's motion to sever the perjury counts from his trial on the substantive issues. The Court then turns to consider the motion by Rodriguez and Garcia to sever the trial of Mock's perjury counts from their trial on the possession, conspiracy and firearm counts.

Before proceeding, and by way of introduction to the perjury issue, the Court notes that the attitude of the Courts to the crime of perjury is extremely negative. "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." *United States v. Mandujano,* 425 U.S. 564, 576, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976) (Burger, C.J.); *see also United States v. Wong,* 431 U.S. 174, 178, 97 S.Ct. 1823, 1825, 52 L.Ed.2d 231 (1977); *United States v. Washington,* 431 U.S. 181, 189, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977). Perjury by a witness demonstrates a cynical and contemptuous attitude towards his obligations and duties in court proceedings, having previously sworn to a solemn oath to tell the truth.[3] False testimony at trial undermines the very foundation of our justice

---

3. "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." Fed.R.Evid. 603.

system, generating unnecessary confusion for juries and leading to unfortunate results in some cases. Indeed, under the sentencing guidelines, false trial testimony by a defendant in a criminal case is an appropriate basis for imposing an obstruction of justice upgrade at the time of sentencing by the court. *See, e.g., United States v. Bonds*, 933 F.2d 152, 155 (2d Cir.1991) (per curiam).

### A. Sufficiency of Perjury Counts

■ Mock's first motion with respect to the perjury counts relies on his argument that these charges are insufficient as a matter of law. Mock asserts that Count Five does not involve his responses to questions about specific factual issues, but instead charges him with perjury for statements analogous to a plea of not guilty. Mock then contends that the statements upon which Count Six focuses are not material to the ultimate issue at trial.

Mock begins by drawing the Court's attention to *United States v. Endo*, 635 F.2d 321, 323 (4th Cir.1980). *Endo* was a case where a defendant was charged with perjury after she changed her plea from guilty to not guilty. However, the Fourth Circuit rejected the perjury charge, holding that a charge of perjury must be based on " 'a fact or facts' and '[t]he statement must be such that the truth or falsity of it is susceptible of proof.' " *Endo*, 635 F.2d at 323 (quoting *Kolaski v. United States*, 362 F.2d 847, 848 (5th Cir.1966)).

Mock argues that *Endo* requires dismissal of the perjury charges relating to his statements concerning drug dealing, cocaine and the apartment, because the statements were akin to a not guilty plea. However, Mock answered "No" to the following questions:

"Were you a drug dealer?"
"Since ... 1990, have you had any involvement with cocaine since that time?"
"Never negotiating deals for cocaine?"
"Now, have you ever been to apartment 24 at 615 West 143rd Street?"

Transcript, at 368, 387–88. The plain language of these questions and responses clearly demonstrates that they do not involve legal conclusions, such as not guilty; they are specific answers to factual questions. The motion to quash Count Five is denied.

■ Turning to Count Six, the Court notes that Mock's motion to dismiss this Count cites no legal authority; it is based on the bald proposition that "Whether [Mock] knew defendant Garcia by 'Toton' or whether he knew anyone else by the name of Toton was not relevant to the ultimate issue." The materiality of perjured testimony is a threshold issue for determination by the Court; further, materiality must be broadly construed. *See United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). According to *United States v. Gugliaro*, 501 F.2d 68, 71–72 (2d Cir.1974), "[t]he test of materiality in a perjury case is whether or not the false testimony was capable of influencing the jury on the issue before it.... The misstatement of fact need not be 'dispositive' of the inquiry in question to be material."

It is obvious to the Court that the issue whether Mock knew Garcia by the name "Toton" could have influenced the jury. At the first trial, the government introduced drug records containing the name "Toton." Further, Mock was one of four defense witnesses claiming not to know Garcia by this name. It is clear that contrary testimony from Mock could have influenced the jury, which ultimately deadlocked 11–1 for acquittal. Mock's motion to dismiss Count Six is therefore denied.

### B. Mock Motion to Sever Perjury Counts

■ Mock next moves under Fed. R.Crim.P. 14 to sever the perjury counts from the trial on the substantive offenses "so that the defendant is not prejudiced by an inference that may be drawn by the jury with regard to the Government's view of the defendant [sic] prior denial of guilt." Mock Motion, at 31. In the face of the Second Circuit's clear precedents, the motion must be denied.

"The law in this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where, as here, the false declarations concern the substantive offenses.... The contention that there is some inherent prejudice in joining perjury and related counts with substantive offense charges has been widely rejected." *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.) (citations omitted), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984); *see also United States v. Ruiz,* 894 F.2d 501 (2d Cir.1990) (affirming joinder of perjury and bank fraud counts). Further, as demonstrated by the cases cited in *Potamitis, supra,* 739 F.2d at 791, this precedent is well-established, and reflects a balancing of the interests of trial efficiency with the interests of the individual defendant. *See generally United States v. Werner,* 620 F.2d 922, 928–29 (2d Cir.1980) (Friendly, J.). To cure any possible prejudice that does exist, the Court can instruct the jury to consider the counts separately. However, in light of the caselaw, Mock's severance motion must be denied.

### C. Severance Motions of Garcia and Rodriguez

■ Garcia and Rodriguez also move for severance of their trial from Mock's trial on the perjury charge, either by severing Mock as a defendant, or by severing Mock's perjury counts from the other charges against him. Garcia and Mock rely on the assertion that joint trial would be "highly prejudicial to the defendants and would prevent them from obtaining a fair trial. It is apparent that the government, who came so close to losing in the first trial, wants to insure a conviction here, even if it means poisoning the jury by saying that Mr. Mock lied at the first trial in order to help them." Memorandum of Law in Support of Defendant Garcia's Omnibus Motion ("Garcia Motion"), at 7.[4]

■ There is an extremely heavy burden on a defendant who is moving for severance under Fed.R.Crim.P. 14. The defendant seeking severance "must show prejudice so severe as to amount to a denial of a constitutionally fair trial." *United States v. Serpoosh,* 919 F.2d 835, 837 (2d Cir.1990) (citing *United States v. Cunningham,* 723 F.2d 217, 230 (2d Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984)). One example of such a situation is where defendants offer antagonistic defenses such that the jury would have to convict one of the two defendants, or where the jury would infer that both defendants are guilty because of the conflict in their testimony. *See Grant v. Hoke,* 921 F.2d 28 (2d Cir.1990); *Serpoosh, supra,* 919 F.2d at 837–38; *United States v. Villegas,* 899 F.2d 1324 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990).

■ To prevail on a severance motion, defendant must make a "showing that he [will] suffer[ ] 'prejudice so substantial as to amount to a miscarriage of justice.'" *United States v. Uccio,* 917 F.2d 80, 88 (2d Cir.1990) (quoting *United States v. Friedman,* 854 F.2d 535, 563 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989)). That separate trials would yield a better chance for acquittal is not sufficient to justify severance. *United States v. Scarpa,* 913 F.2d 993, 1015 (2d Cir.1990). " '[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'" *United States v. Chang An-Lo,* 851 F.2d 547, 557 (2d Cir.) (quoting *United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983)), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). "It is an 'established rule' that 'a nonfrivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R.Crim.P. 8(b).'" *Uccio, supra,* 917 F.2d at 87 (quoting *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir.1988)). Further, when evidence is admissible against all of

---

4. Defendant Rodriguez, on the consent of all parties, joins in the motions made by defendant Garcia.

the defendants, severance is not required. *See Uccio, supra,* 917 F.2d at 88; *Scarpa, supra,* 913 F.2d at 1015; *Villegas, supra,* 899 F.2d at 1347.

In the instant case, Garcia and Rodriguez have failed to show that joinder of their trial with Mock's perjury counts will so prejudice them that they will be denied a fair trial. The government has demonstrated that the evidence that will be used against Mock to prove the perjury count will also be admissible against Garcia and Rodriguez under Fed.R.Evid. 804(b)(1) and 801(d)(2)(E). Further, the government argues that both Mock's perjury, and Garcia's and Rodriguez' attempts to suborn this perjury, will be admissible to show consciousness of guilt. *See, e.g., United States v. Roldan–Zapata,* 916 F.2d 795, 803–04 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991). Even if the evidence is not admissible as against Garcia and Rodriguez, these defendants have failed to carry the extremely heavy burden of showing that denial of the severance motion will preclude a fair trial. The severance motion of Garcia and Rodriguez is therefore denied.

### III. *Motions of Garcia and Rodriguez to Dismiss their Indictments*

Garcia and Rodriguez next move the Court to dismiss the second superseding indictment against them on double jeopardy grounds. They also move to have the Court dismiss the indictment in the exercise of its supervisory power.

### A. Double Jeopardy Motion

Defendants' double jeopardy motion relies on the assertion that the government was responsible for the mistrial at the first trial because it did not turn over evidence that was discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Fed.R.Crim.P. 3500, until after the mistrial was declared. The evidence that allegedly was withheld consisted of items seized from Valdez when he was arrested on December 18 and tapes of conversations between Mock and Valdez.

### 1. *Evidence Allegedly Withheld at the First Trial*

The Court begins by examining the evidence that allegedly was withheld by the government in violation of *Brady* and 18 U.S.C. § 3500. Garcia and Rodriguez contend that the government did not disclose "numerous receipt [sic] for cash wire transfers to different individuals in the Dominican Republic" seized from Valdez upon his arrest. Affidavit of Philip R. Edelbaum, Esq., sworn to on Oct. 25, 1991 ("Edelbaum Aff.") ¶ 17. Defendants claim that the information should have been turned over because it concerned Valdez' true occupation and source of income, and would have been useful on cross-examination to show that the drug distribution operation belonged to Valdez. In contrast, the government asserts that this information was made available for defendants' attorneys to inspect when they visited the United States Attorney's Office. *See* Affirmation of Nancy Northup, Esq. ("Northup"), sworn to on November 22, 1991 ("Northup Aff.") ¶¶ 7–8; Exh. D, at 2 (May 31, 1991 letter informing counsel of availability of evidence seized from defendants and Mr. Valdez).

At the hearing on December 4, 1991, both AUSA Northup and attorney Edelbaum proffered to the Court their respective recollections of the meeting during which the government's evidence was disclosed to the defendants. Northup also responded to extensive inquiries by the Court concerning her recollection of the manner in which Valdez' personal belongings were stored by the United States Attorney's office. Northup specifically recalled the presence of the receipts within the single envelope containing all of Valdez' personal property; she also testified that she had no reason to believe that the receipts had ever been separated from the other evidence in the file. In contrast, Edelbaum stated that he did not recall seeing the evidence in the envelope, and that if the evidence had been present, he would have seen it. Having fully explored this matter during the proffer, and having listened to and observed both attorneys, the

Court finds that the evidence was disclosed by the government in the first instance.

The defendants also claim that they were prejudiced by the government's admitted failure to disclose tapes of certain conversations between Mock and Valdez. Defendants assert that the taped conversations would have been effective impeachment material. In contrast, the government claims that this evidence was not effective impeachment material, relying on the well-established precedent that there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

### 2. *Standard Governing Double Jeopardy Bar*

■ The Court next turns to the law governing the double jeopardy bar. It is axiomatic that "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Richardson v. United States*, 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *United States v. Ustica*, 847 F.2d 42, 48 (2d Cir.1988) ("where a mistrial is declared because of the failure of a jury to reach a verdict, there is no double jeopardy bar to retrial of the defendant").

■ It has been argued that no double jeopardy bar arises if a mistrial is declared on the motion of the defendant, or on the defendant's consent. However, even when a mistrial results from the defendant's own motion, double jeopardy precludes retrial if there "was intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.... Only where the governmental conduct in question is intended to 'goad' the defendant into moving for mistrial may a defendant raise the bar of double jeopardy to a second trial." *Oregon v. Kennedy*, 456 U.S. 667, 675–76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d

416 (1982); *see United States v. GAF Corp.*, 884 F.2d 670 (2d Cir.1989) (double jeopardy bar arises upon showing of prosecutorial intent to cause mistrial); *United States v. Rivera*, 802 F.2d 593, 597 (2d Cir.1986) (double jeopardy bars retrial after defense mistrial motion only upon "governmental misconduct so egregious that [defendant] must abandon his right to take his case to the first trier of the facts").

■ As this legal standard demonstrates, the double jeopardy inquiry focuses on whether the government *intended* to cause the mistrial by withholding the evidence. However, defendants have not argued, and have failed to produce even a scintilla of evidence to support a claim, that the government intended to cause a mistrial by withholding evidence. At most, defendants assert that they "were prejudiced in not having the material" and that "the government was directly responsible for the mistrial." Garcia Motion, at 4.

Defendant's claim that an acquittal would have resulted from more effective cross-examination based on the non-disclosed tape recordings is entirely speculative. *See, e.g., United States v. Wright*, 622 F.2d 792, 795 (5th Cir.) ("Any link between bad faith prosecutorial misconduct during the trial, if it existed, and the jury's inability to reach a verdict is too attenuated to be more than mere speculation."), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980). Further, this type of speculation cannot serve as the basis for precluding a retrial of these defendants under the double jeopardy bar. The remedy for a violation of *Brady* and 18 U.S.C. § 3500 is a new trial—not the double jeopardy bar. *See, e.g., Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972) ("suppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.'") (quoting *Brady, supra*, 373 U.S. at 87, 83 S.Ct. at 1196).[5] In fact, Garcia and Rodriguez already have this remedy, with a new trial scheduled to

**5.** The Court takes this opportunity to reject defendants' assertion that *Giglio* requires the government to separate and categorize the evidence it discloses for the purpose of notifying the defendant of its potential impeachment value.

begin on January 6, 1992. Defendants' allegation that the government *caused* the mistrial does not show that it *intended* to cause the mistrial, and the double jeopardy motion therefore must be denied.

### B. Dismissal of Indictment under Court's Supervisory Power

 Garcia and Rodriguez next move the Court to dismiss the indictment in the exercise of its supervisory power. However, the cases defendants cite do not demonstrate that the relief they seek is within this power. In the exercise of its supervisory power, a Court can dismiss an indictment "to prevent prosecutorial impairment of the grand jury's independent role." *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir.1983); *see also United States v. Vetere*, 663 F.Supp. 381, 382 (S.D.N.Y.1987) (dismissing indictment for prosecutorial misconduct before grand jury, with leave to file new indictment). A Court can also use its supervisory power to reverse a conviction for prosecutorial misconduct. *See United States v. Hasting*, 461 U.S. 499, 505–07, 103 S.Ct. 1974, 1978–79, 76 L.Ed.2d 96 (1983).

However, none of this precedent supports dismissal of an indictment for the purported failure to turn over evidence that allegedly was within *Brady* and 18 U.S.C. § 3500. It is clear that dismissal of an indictment "is an 'extraordinary' remedy." *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir.1989) (quoting *United States v. Thibadeau*, 671 F.2d 75, 77 (2d Cir.1982)), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *see also United States v. Fields*, 592 F.2d 638 (2d Cir.1978) (dismissal of indictment is "most drastic remedy"), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *cf. Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (supervisory power to dismiss indictment for prosecutorial misconduct before grand jury does not supplant harmless error analysis). Defendants have cited neither facts nor precedent demonstrating that dismissal of the indictment is a proper remedy in the circumstances of this case. Defendant's motion is therefore denied.

### CONCLUSION

For the foregoing reasons, Mock's motions to suppress evidence seized from his home and to suppress testimony given at the first trial are denied. The Court also denies Mock's motions to dismiss the perjury counts against him, and the defendants' various motions to sever the perjury counts from the trial on the other charges. The motions of defendants Garcia and Rodriguez to dismiss the indictment against them is denied. Defendants' motion for supplemental discovery and for a bill of particulars is also denied. Finally, Mock's in limine motion to exclude evidence of his prior conviction is deferred until trial.

SO ORDERED.