**Commonwealth** of the
Northern Mariana Islands,
Plaintiff/Appellant,
v.
William **Campbell**,
Defendant/Appellee.
Appeal No. 92-012
Traffic Case No. 92-0070
July 22, 1993

---

Argued and Submitted March 11, 1993

Counsel for appellant: Robert C. Naraja, Attorney General, Julie J. Van Dyne, Assistant Attorney General, Saipan.

Counsel for appellee: G. Anthony Long, Saipan.

BEFORE: DELA CRUZ, Chief Justice, VILLA-GOMEZ, Justice, and BELLAS, Special Judge.

DELA CRUZ, Chief Justice:

 The government appeals an order in favor of defendant William C. Campbell ("Campbell") dismissing, without prejudice, charges of driving while under the influence of alcohol pursuant to 9 CMC § 7105. The dismissal followed the granting of a motion in limine excluding all evidence of Campbell's demeanor the night he was arrested. The motion was made on grounds that the government failed to provide him with exculpatory evidence, as required under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[1] We have jurisdiction pursuant to 1 CMC § 3102(a). For the reasons noted below, we vacate both the order in limine and the order of dismissal, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 1992, two police officers were dispatched to the home of a "Mr. Staley" due to a disturbance caused by an individual identified as "Gary Isla."[2] The incident led to Isla's detention. Campbell allegedly assisted the police in "handling" Isla "as well as having him placed into the police car."

Staley allegedly rode to the police station in the same police car as Isla. Campbell followed the police car to give Staley a ride back home. However, before reaching the Susupe police station, another officer stopped Campbell. The officer cited Campbell for driving while under the influence of alcohol. He entered a plea of not guilty at his arraignment on January 13, 1992.

On January 14, 1992, the trial court ordered the prosecution to provide discovery material to the defense, including evidence the government intended to present in its case in chief.[3]

By memorandum dated January 29, 1992, Campbell's original counsel, the Public Defender, requested copies of the police "reports" regarding Gary Isla and the identity of the "two officers" who transported Isla the night Campbell was arrested. The prosecutor objected to this request and did not provide the requested information.

Thereafter, defense counsel told the prosecutor that Campbell was entitled to the requested discovery pursuant to Com. R. Crim. P. 16(c). Counsel noted that the information was "absolutely material to his defense" because "the officers saw [Campbell] immediately before he got into the car and [Campbell] was behind them until another officer pulled him over." The prosecutor failed to produce any discovery in response to this request.

At the March 17, 1992, status conference, Campbell's new counsel requested the court to set a pretrial motion calendar. Trial was set for May 8, 1992.[4] Campbell, however, never moved to compel production of the materials sought earlier. By the date of trial, the government still had not provided the information requested.

On the day of trial, Campbell moved the court in limine for an order excluding all "evidence concerning Mr. Campbell's demeanor or the manner in which he was driving on the night" he was arrested. Campbell so moved because the government had failed "to provide the defense with the relevant materials," specifically the "police reports" and "names of the officers" who detained Isla. Campbell asserted that the requested information was material to his defense. The officers "were able to observe Mr. Campbell and his demeanor and his actions immediately prior to the time he was driving." Such evidence would support the "contention that Mr. Campbell was not under the influence of alcohol at the time."

Campbell advanced three arguments at the hearing in support of his motion: (1) the government failed to produce the requested discovery pursuant to the trial court's January 14, 1992, order, (2) Com. R. Crim. P. 16 required the disclosure of the requested discovery, and (3) the *Brady* doctrine required disclosure of the requested discovery.

The government opposed the motion because Campbell failed to move to compel the requested discovery,

---

[1] A "motion in limine" is defined as a "pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent predispositional effect on [the] jury." BLACK'S LAW DICTIONARY 1013 (6th ed. 1990). A motion to suppress, on the other hand, is a device "used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation" of one's constitutional rights. *Id.*, 1014. The motion made here was a motion to suppress evidence of the defendant's demeanor based on a *Brady* due process violation. Accordingly, we will treat it as such. Defendant labeled his motion a "motion in limine" most likely because he had filed it after the cutoff date set to bring pretrial motions, including motions to suppress. Com. R. Crim. P. 12(b)(3).

[2] Our recitation of the facts is based on the record on appeal and the briefs of the parties. No specific findings were made by the trial court.

[3] In response, the government produced "a copy of the report that was prepared by the police officer that stopped Mr. Campbell and the police officer that performed the blood alcohol content test on Mr. Campbell."

[4] The trial was later continued to May 21, 1992.

and the motion in limine was therefore untimely. The government disputed Campbell's contention that the requested information was *Brady* material and asked the court to review the material *in camera* before making a determination on this issue. The officers who detained Isla were in the courtroom during argument on the motion. Moreover, the Isla report was available for *in camera* inspection by the Court.

Following argument, the trial court stated:

> THE COURT: Based upon arguments of counsel, [the] motion in limine is granted. And I don't want to come back and sit down this afternoon, if that part of the evidence is not in, it would not be possible . . . .
>
> . . . .
>
> . . . to try this case; case dismiss [sic] without prejudice.
>
> . . . .
>
> THE COURT: I don't have any time in this court to play games.

The court signed a written order dismissing the case, without prejudice, on May 21, 1992. The government timely appealed.

## II. ISSUES AND STANDARD OF REVIEW

The government raises one issue in its brief for our review: whether the trial court erred "in dismissing the case for an alleged *Brady* [*v. Maryland, supra*] violation where the [trial] court failed to examine the demanded evidence and determine whether it was material."

In addressing this issue, we need to determine the non-*Brady* basis upon which the in limine order could have rested. *See In re Estate of Dela Cruz*, 2 N.M.I. 1, 16 n.10 (1991). We do this because the defendant advanced at the hearing below two other grounds in support of his motion, and the trial court, in granting the motion, did not specify the ground on which its order rested. These grounds, as Campbell argued below, are: (1) the government violated Com. R. Crim. P. 16; and (2) the government violated the January 14, 1992, pretrial discovery order.

■ The *Brady* issue raised by the government requires a twofold analysis. The first question we need to address is whether the court's order was founded on a due process violation and was therefore proper. This

issue presents a question of law which we review de novo. *Commonwealth v. Lizama*, 3 N.M.I. 400 (1992), *aff'd*, 27 F.3d 444 (9th Cir. 1994).[5]

■ The second *Brady* question is whether the trial court abused its discretion in granting the motion and dismissing the case, in view of its power to cure a potential *Brady* violation. This and the non-*Brady* issues implicate the trial court's discretionary powers. Therefore, the standard of review is abuse of discretion. *Commonwealth v. Saimon*, 3 N.M.I. 365 (1992).

## III. DISCUSSION

### A. The Rule of *Brady v. Maryland*

■ The United States Supreme Court held in *Brady* that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196-1197, 10 L. Ed. 2d at 218. *Brady* material includes information "that bears on the credibility of a significant witness in the case." *United States v. Brumel-Alvarez*, 991 F.2d. 1452, 1461 (9th Cir. 1992). Impeachment evidence is "favorable" evidence. *Id.* To establish a *Brady* violation, a defendant must show that the prosecutor failed to disclose material evidence. *Id.* The underlying policy set forth in *Brady* and its progeny rests on the fundamental principle that the accused must be afforded a fair trial. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197, 10 L. Ed. 2d at 218. As one commentator notes, a *Brady* "claim will have no merit" where the disclosure of material evidence "did not come too late to deprive the defendant of a fair trial." 8 James W. Moore, MOORE'S FEDERAL PRACTICE ¶ 16.06[2] (1993 rev.), citing at n.108 *United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988) and *United States v. Andersson*, 813 F.2d 1450

---

[5] In *United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir. 1992), the Ninth Circuit noted that it had not employed a "single standard of review where there have been challenges to a conviction based on a *Brady* violation." The court declined to apply a specific standard of review, noting that its decision to reverse would be the same under any standard of review, whether it be de novo, clear error or abuse of discretion. Similarly, our decision here would remain the same regardless of the standard applied. However, where we are asked to determine whether a defendant's due process rights were violated, we employ a de novo standard.

(9th Cir. 1987). Generally, a defendant must be tried and convicted before any due process violation becomes of consequence.[6] This is clearly not the case here.

 The court granted the suppression motion and dismissed the case. There was no trial, let alone a conviction. It did not consider whether the information requested was exculpatory and thus *Brady* material. We therefore agree with the government that the court erred in granting the motion in limine and dismissing the action, to the extent the orders were based on due process grounds.

 As noted above, our *Brady* inquiry does not end here. The government should produce exculpatory material to the defendant promptly upon discovery. However, *Brady* requires only that the government produce exculpatory material in time for the defendant's effective use of those materials at trial. *Gordon*, 844 F.2d at 1403; *Andersson*, 813 F.2d at 1458-1459.

 Should a potential *Brady* violation come to light, the court has broad discretion to remedy the problem before the accused is prejudiced by non-disclosure. *United States v. Tamura*, 694 F.2d 591, 600 (9th Cir. 1982). Here, the court had the power and discretion to cure any *potential Brady* violation before the trial started. However, it chose to dismiss the case rather than cure the potential *Brady* violation.

We now address the second *Brady* question: did the trial court abuse its discretion in granting the motion and dismissing the case, in view of its power to cure a potential *Brady* violation before trial? In the same analysis, we will review for abuse of discretion the court's rulings based on the two other grounds raised by Campbell: whether the government violated Com. R. Crim. P. 16 and the trial court's January 14, 1992, pretrial discovery order, which ordered the government to disclose exculpatory evidence and evidence it expected to present in its case in chief.

## B. The Pretrial Orders

### 1. *The Government's Discovery Obligations under Com. R. Crim. P. 16*

First, we address the government's assertion that Campbell waived his right to the requested material by not bringing a motion to compel discovery. Com. R. Crim. 16(a)(1)(C) provides that a defendant may seek discovery of documents and tangible objects that are "material to the preparation of his/her defense."[7]

 The fact that Campbell did not move to compel does not excuse the government from failing to comply with its discovery obligations. The court has the discretion to fashion a remedy for a party's non-compliance with its discovery obligations "at any time during the course of the proceedings." Com. R. Crim. P. 16(d)(2). The court had the power to cure any discovery violation raised by Campbell's motion in limine. For example, the court could have ordered the government to produce the Isla report pursuant to Com. R. Crim. P. 16.

 Aside from that, if the information requested is truly *Brady* material, there is an affirmative duty on the prosecutor to disclose such material, independent of Com. R. Crim. P. 16. A defendant is not required to seek court intervention to obtain disclosure of *Brady* material from an obstinate prosecutor. However, if the prosecution fails or refuses to turn over *Brady* material, the defendant should seek an order to compel disclosure. With these principles in mind, we now examine the propriety of the trial court's orders.

### 2. *The Trial Court Orders Granting the Motion in Limine and Dismissing the Action*

 An abuse of discretion exists if the "court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Lucky Dev. Co., Ltd. v. Tokai, U.S.A., Inc.*, 3 N.M.I. 79, 84 (1992). We hold that the trial court abused its discretion in granting the motion in limine and dismissing the case *sua sponte*. It should have fashioned a remedy short of dismissal.

The defendant made no showing to the trial court that the requested information is in fact *Brady* material. The only evidence that was before the court was an

---

[6] *Brady* has recently been held to apply in one notable pretrial situation not applicable here. "*Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant." *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993).

[7] Com. R. Crim. P. 16(a)(2), in contrast, precludes discovery of "reports" or "other internal government documents" made "in connection with the investigation or prosecution of the case." The government never argued to the trial court that the requested information fell outside the scope of discovery. The government only contended that the requested information was not *Brady* material and that Campbell waived his right to the information because he failed to bring a motion to compel. Moreover, the government has never asserted that the Isla report was made "in connection" with the "investigation or prosecution" of the case against Campbell. Thus, the information requested appears discoverable and the government was under an obligation to produce all responsive material.

affidavit submitted by Campbell's original counsel. The affidavit provides only that the Isla report and names of Isla's detaining officers were relevant because they might lead to favorable evidence regarding the issue of Campbell's demeanor. Despite argument to the contrary, Campbell does not know if the requested information was indeed exculpatory. Campbell's counsel stated to the trial court:

> That's the whole point here. That's the point, Your Honor. Couldn't talk [to the police officers]. Don't know who they are. So, how can we find out what they knew, or what they recalled, or what they did, what did [sic] they observed about Mr. Campbell or anything. We don't know. They didn't give it to us. And based on the information that we have, they could corroborate but we've had no opportunity to ever do that, Your Honor.

Conversely, the government made no showing to the trial court that the information requested did not include exculpatory evidence. The government simply argued that the requested information was not *Brady* material. It also argued that if it was wrong about the nature of the requested information, the trial court should first conduct an *in camera* hearing to determine the issue. The government refused to divulge the nature or the character of the requested information.

We agree with Campbell that the information he requested was relevant to the issue of the defendant's demeanor at or about the time of Campbell's arrest. If, as he asserts, the police officers who detained Isla observed his conduct and actions, such information may be critical in impeaching the testimony of the arresting officer. Also, the report regarding Isla may contain some information favorable to the defense, if, for example, it indicates that Campbell assisted the police in detaining Isla.

On the other hand, the report and the officers may provide no help whatsoever to Campbell's case. Without examining the requested information, the court had no facts before it to rule on the in limine motion. There was no showing that the discovery Campbell requested was actually *Brady* material, that the government violated the court's January 14, 1992, pretrial discovery order,[8] or that Campbell was even entitled to relief pursuant to Com. R. Crim. P. 16.

---

[8] Moreover, on the record, Campbell's contention that the government violated the trial court's pretrial discovery order is without merit as the government complied with that order. *See* note 3, *supra*.

The government is asking us to find error on the basis that the requested report and the information regarding the police officers who detained Isla are not *Brady* material. We are, however, unable to determine whether the government in fact withheld *Brady* material based on the record presented to the trial court. Any conclusion we may make as to the true nature of the requested information would merely be "conjectural and speculative." *See United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).

The trial court erred because there was no factual predicate from which to assess the motion. Therefore, we hold that the trial court abused its discretion in granting the motion in limine. The order of dismissal, which was based on the trial court's suppression ruling, should thus be set aside.

## 3. In Camera *Review*

The government requested the trial court to review the disputed information *in camera* to determine whether the requested information constituted *Brady* material. It contended that the information was not exculpatory.

 Where the parties disagree on whether certain information is *Brady* material, an *in camera* determination is the preferred means of resolving the dispute. While there is no duty to provide the defense unlimited discovery, if a general request is material or if a substantial basis for claiming materiality exists, then the prosecutor should provide the information or submit the issue to the trial judge for *in camera* determination. *United States v. Gardner*, 611 F.2d 770, 774-775 (9th Cir. 1980); *see also United States v. Agurs*, 427 U.S. 97, 107-08, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342, 352 (1976). A prosecutor may also respond to a specific request by submitting the matter to the trial judge. *Gardner*, 611 F.2d at 775, citing *United States v. Ross*, 511 F.2d 757, 765 (5th Cir. 1975), *cert. denied*, 423 U.S. 836, 96 S. Ct. 62, 46 L. Ed. 2d 54 (1975). Further "[i]n camera inspection and excision is a sound approach to a *Brady* inquiry" should non-material information warrant protection from disclosure. *United States v. Jones*, 612 F.2d 453, 456 (9th Cir. 1979), *cert. denied*, 445 U.S. 966, 100 S. Ct. 1656-1657, 64 L. Ed. 2d 242 (1980).

 *Brady* questions should ordinarily be presented to the court by written motion brought pursuant to Com. R. Prac. 8 and Com. R. Crim. P. 47. The accompanying affidavits should set forth, to the extent known, the substance, nature and materiality of the disputed evidence. Also, the parties should submit declarations establishing their good faith attempt to

resolve the matter amongst themselves before judicial intervention. We are confident that had the parties below cooperated as to discovery, or had Campbell brought a motion to compel production of the materials during discovery, this dispute would have been resolved well before the trial date. This procedure for requesting an *in camera* hearing will ensure that defendants are afforded their due process rights and will assist in preventing the costly remedy of a *Brady* violation: a new trial for the defendant.

### 4. *The Order of Dismissal*

Campbell contends that the dismissal sanction was appropriate in view of alleged prosecutorial misconduct for withholding apparent *Brady* material. He asserts that any error on the part of the trial court was harmless.

Campbell has directed our attention to cases setting forth the authority of the trial court to dismiss an indictment pursuant to the court's supervisory powers. In two of the three cases cited, the dismissals were reversed or vacated: *United States v. Isgro*, 751 F. Supp. 846 (C.D. Cal. 1990), *rev'd,* 974 F.2d 1091 (9th Cir. 1992), and *United States v. Lopez*, 765 F. Supp. 1433 (N.D. Cal. 1991), *vacated*, 4 F.3d 1455 (9th Cir. 1993). The third case cited by Campbell is factually inapposite.[9]

The law is clear that dismissal of an indictment is an "extraordinary remedy." *United States v. Garcia*, 780 F. Supp. 166, 177 (S.D.N.Y. 1991). While a court has the power to dismiss pursuant to its supervisory powers, it is a disfavored remedy. *See United States v. Marshank*, 777 F. Supp. 1507, 1529 (N.D. Cal. 1991).

Campbell appears to argue that although these cases relate to indictments by a grand jury, they also apply to criminal complaints. We agree and find no distinction for purposes of our analysis here. In order to "warrant dismissal, the government's misconduct must not only be flagrant, but must also have prejudiced the defendant." *Id.* Campbell has shown neither here.

Moreover, we are not aware of any authority which provides that dismissal is appropriate for the alleged failure to turn over evidence that allegedly was *Brady* material. The *Isgro* case confirms our position. *Isgro*, in reversing the trial court, stated:

Similarly, in *Spillone*, 879 F.2d 514, the defendant argued before the Ninth Circuit that a dismissal was proper in part because the prosecutor had delayed in giving defense counsel certain *Brady* material. We stated that '[t]o ask for a dismissal of the indictment on this ground is unwarranted,' *id.* at 522, reasoning that the government's failure to comply with its duty to disclose exculpatory evidence at trial 'was not sufficient to justify a dismissal of the indictment.' *Id.*

974 F.2d at 1098.

There is nothing in the record before us that suggests that the prosecutor's refusal to turn over the requested material constituted "flagrant misconduct," as Campbell contends. Understandably, the court was irritated by the circumstances presented to it by this case. However, assuming there was misconduct, the trial court should have first considered sanctioning counsel or imposing a remedy short of dismissing the case.[10] A hearing or a short continuance would have allowed Campbell the opportunity to interview the police officers and review the Isla report.

## IV. CONCLUSION

We hereby **VACATE** the suppression order granted in limine and the consequent order of dismissal. We **REMAND** the matter for further proceedings consistent with this opinion, including *in camera* inspection by the trial court as to the materials requested by Campbell. If the requested materials are exculpatory, the trial court should order the government to produce those materials within a reasonable time before trial.

---

[9] *United States v Marshank*, 777 F. Supp. 1507, 1524 (N.D. Cal. 1991) (government attorneys had an "ongoing relationship" with the defendant's attorneys such that the association was "outrageous and shocking to the 'universal sense of justice'").

[10] We are not saying that dismissal can never be an appropriate remedy. There may be situations where dismissal is warranted by virtue of the reprehensible conduct of the prosecution.