UNITED STATES of America,
Plaintiff–Appellant,

v.

Joseph ISGRO; Raymond Anderson;
Jeffrey S. Monka, Defendants–
Appellees.

No. 90–50531.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1992.

Decided Sept. 1, 1992.

As Amended on Denial of Rehearing and
Rehearing En Banc Nov. 25, 1992.

Drew S. Pitt, Asst. U.S. Atty., Los Angeles, Cal., Frank J. Marine, William S. Lynch, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant United States of America.

Donald M. Re, Los Angeles, Cal., for defendant-appellee Joseph Isgro. W. Michael Mayock, Pasadena, Cal., for defendants-appellees Raymond Anderson and Jeffrey Monka.

Before: SNEED and D.W. NELSON, Circuit Judges, and ROLL, District Judge.[*]

D.W. NELSON, Circuit Judge:

Joseph Isgro, Raymond Anderson and Jeffrey Monka ("defendants") were indicted by a grand jury on government charges that they were involved in a complex scheme to promote certain musical artists illegally through the use of "payola"—payments/bribes to officials at local radio stations—using money allegedly derived from narcotics trafficking. Subsequently, citing prosecutorial misconduct before the grand jury and in pretrial proceedings, the district court dismissed the indictment with prejudice. In so doing, the district court invoked both the defendants' right to a constitutionally sound grand jury process and the court's inherent right to supervise judicial proceedings.

The government appeals, arguing that its conduct did not justify a dismissal of the indictment. We reluctantly agree. Based on recent Supreme Court case law, we find that the district court erred in dismissing the indictment, and we now reverse.

## BACKGROUND [1]

Defendants were indicted by a grand jury on November 30, 1989. The indictment contained 57 counts, most of which

---

[*] The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

1. These facts are taken in large part from the district court's published opinion. *See United States v. Isgro,* 751 F.Supp. 846 (C.D.Cal.1990).

named Isgro. The indictment charged Isgro with RICO violations, mail fraud, various conspiracies, payola, filing of false income tax returns, and obstruction of justice. Defendant Anderson was charged with mail fraud and conspiracy, and defendant Monka with filing false tax income returns and conspiracy.

The government's main witness before the grand jury was Dennis DiRicco, an attorney and accountant who had allegedly been a coconspirator with the defendants.[2] DiRicco had been charged and tried in federal district court in San Francisco in 1988 for charges involving money laundering and narcotics. DiRicco testified at his trial, and a transcript of his testimony was prepared at that time. The government and the defendants disagree over the exact content of this testimony, but it conflicted significantly with DiRicco's later testimony before the grand jury investigating Isgro, Anderson and Monka. In its published opinion dismissing the indictment, the district judge characterized DiRicco's testimony as follows:

> That *testimony constituted a complete and detailed denial of any wrongdoing not only by [DiRicco], but also by any of the defendants in this case.*
> Among other things, DiRicco *denied* in sworn testimony before his trial jury acquiring cash from drug dealers, *denied* taking that cash to Isgro personally, and *denied* sending it to him via Isgro's employee, David Michael Smith. Furthermore, DiRicco *denied* helping cash couriers avoid security checks at San Francisco International Airport, *denied* conspiring with Isgro and others to defraud the Government of income tax, and *denied* conspiring with Isgro or anyone else to commit any crime. Evidently, that testimony had considerable effect on *his* jury since it only convicted him of two counts and acquitted him of eight counts.

*United States v. Isgro,* 751 F.Supp. 846, 847 (C.D.Cal.1990) (emphasis in original).

The main prosecuting attorney in this case, William Lynch, received a copy of this transcript in April 1989. Mr. Lynch questioned DiRicco before the grand jury, and at that time extracted testimony from DiRicco that was "diametrically opposed to his prior trial testimony in every important respect." *Isgro,* 751 F.Supp. at 848. The government informed the grand jury that DiRicco had been convicted in a previous trial, but did not reveal that DiRicco had testified or that a transcript of that testimony had been prepared. As a result, the grand jury returned the indictment without the benefit of DiRicco's previous testimony.

During the course of pretrial proceedings, defendants' attorneys repeatedly asked the government for all exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The government told the defense and the district court that all *Brady* material had either been released or would be released shortly before trial. The government neither produced the transcript nor acknowledged its existence; instead, it repeatedly denied the existence of material which would tend to exonerate the defendants. The government also assured the court that it fully understood its obligations to turn over any such materials.

Several weeks before trial, at the urging of the court, the government released a large amount of discovery to the defense. The material pertaining to DiRicco included a copy of statements made to the government after DiRicco had agreed to cooperate, but did not include either a copy of the trial transcript or an acknowledgment that the transcript existed.

Suspecting that despite its assurances the government was not revealing all exculpatory material, defense counsel finally conducted independent investigations and subsequently learned of the trial transcript's existence. However, the content of DiRicco's prior testimony was not discovered by defense counsel until the defendants' trial was well under way. At an August 28, 1990 appearance before the district court, defense counsel produced the transcript. Defense counsel asserted that the

---

**2.** DiRicco's testimony was clearly crucial to the indictment of his coconspirators. The district court concluded that, without DiRicco, only misdemeanor charges could have been brought against Isgro and no charges could have been filed against Anderson and Monka. DiRicco's significance to the prosecution is further illustrated by the extent of his testimony before the grand jury, totalling 164 transcript pages.

transcript contained material completely contrary to DiRicco's grand jury testimony and therefore constituted *Brady* material concealed by the government. Defendants asked that the court sanction the government. In response, prosecutor Lynch "flatly denied that there was any inconsistency between the two sets of testimony." *Isgro,* 751 F.Supp. at 848. The court ordered briefing on the question of DiRicco's inconsistencies.

After considering the briefs, the district court dismissed the indictment with prejudice. The court found that the government had misled the grand jury by not presenting DiRicco's testimony, had lied to the court about the existence and nature of the *Brady* material, and had intended to keep the material from the defense even through trial. On the basis of this cumulative misconduct, the court found dismissal with prejudice warranted. The government appeals.

## DISCUSSION

### A. *Introduction*

■ Federal courts draw their power to dismiss indictments from two sources. First, a court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." *United States v. Larrazolo,* 869 F.2d 1354, 1357–58 (9th Cir.1989). Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." *Id.* at 1358.

■ Second, a district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." *Id.* at 1358. Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice—that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"—a dismissal is not warranted. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

In this case, the district court dismissed the indictment because it found that the cumulative prosecutorial misconduct (1) usurped the role of the grand jury and violated the defendants' fundamental right to a fair proceeding, and (2) "resulted in a violation of the defendants' due process" rights sufficient to justify the use of its supervisory powers. *Isgro,* 751 F.Supp. at 851. The question before us is whether the district court erred in this judgment.[3] We review the district court's judgment de novo. *United States v. Smith,* 924 F.2d 889, 897 (9th Cir.1991). *See also United States v. Spillone,* 879 F.2d 514, 520 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990) (noting intracircuit conflict on standard of review, and holding that because dismissals of indictments involve mixed questions of fact and law, de novo standard is appropriate.)

### B. *Analysis*

#### 1. Applicability of Jencks Act

■ As an initial matter, the government argues that DiRicco's trial testimony was covered by the Jencks Act, and that the

---

**3.** The parties confuse this central question as they do battle in their briefs over what constitutes a *Brady* violation and what information falls within the protective scope of the Jencks Act. Although a *Brady* violation may be *indicative* of prosecutorial misconduct, we note that a *Brady* violation need not have occurred before a district court is justified in dismissing an indict-

ment. Other prosecutorial misconduct can suffice: "Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role." *United States v. Samango,* 607 F.2d 877, 882 (9th Cir.1979).

government was not required to turn it over to the defense until DiRicco actually testified at trial. Therefore, it continues, its failure to disclose the transcript to the grand jury could not have been misconduct. We disagree.

The Jencks Act provides that in criminal prosecutions brought by the United States, no statement in the possession of the United States made by a government witness or prospective government witness may be the subject of discovery until that witness has testified at trial. *See* 18 U.S.C. § 3500(a), (b). The Act defines "statement" as follows:

> (e) The term "statement" … means—
>
> (1) a written statement made by any [government] witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital or an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any made by said witness to a grand jury.

18 U.S.C. § 3500(e).

The Ninth Circuit has not directly addressed the question whether trial testimony falls within the scope of the Jencks Act.[4] However, we have had occasion to discuss the purposes behind the Jencks Act: "In enacting the Jencks Act, Congress sought to protect government files against unwarranted intrusions prompted by the excessively expansive reading by some lower federal courts of the United States Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1953) (footnote omitted). This protection of government files is necessary to protect government witnesses from threats, bribery, and perjury." *United States v. Walk*, 533 F.2d 417, 419 (9th Cir.1975). As the government acknowledges, a trial transcript is a matter of public record. Thus, in light of the pur-

poses behind the Jencks Act, we fail to see why a trial transcript should be protected. Asking the government to make available a public record to the defense cannot compromise the internal workings of a prosecutor's office, nor does the government reveal information about a potential witness that is otherwise unavailable by complying with such a request.

Our holding that trial testimony is not within the scope of the Jencks Act is supported by the language of the statute itself. By explicitly including *grand jury* testimony within the scope of the Act, *see* 18 U.S.C. § 3500(e)(3), the statute implicitly indicates that *trial* testimony is not covered. Grand jury proceedings are conducted in secrecy; thus, protecting grand jury testimony makes sense in light of the purpose of the Act noted above. Grand jury testimony would not otherwise be available to the public, while trial testimony is a matter of public record.

We note as well that at least two other circuits have concluded that trial transcripts are not covered by the Jencks Act. *See United States v. Harris*, 542 F.2d 1283, 1293 (7th Cir.1976), *cert. denied sub nom Clay v. United States*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977) ("a transcript of a witness' testimony in a prior trial is not within the Jencks Act"); *United States v. Baker*, 358 F.2d 18, 20 (7th Cir.), *cert. denied*, 385 U.S. 869, 87 S.Ct. 135, 17 L.Ed.2d 96 (1966) (same); *United States v. Munroe*, 421 F.2d 644, 645 (5th Cir.1970), *cert. denied*, 400 U.S. 851, 91 S.Ct. 79, 27 L.Ed.2d 89 (1970) (same). We join the Seventh and Fifth Circuits in holding that previous trial testimony does not fall within the scope of the Jencks Act. The government cannot justify or excuse its misconduct in this case by invoking the Act.

### 2. Dismissal of the Indictment

#### a. *Constitutional Grounds*

█ The district court found that the government's failure to present DiRicco's trial testimony was a usurpation of the

---

**4.** Each case that the government cites for its position that "[i]t is undisputed that DiRicco's trial testimony … constitutes Jencks Act material," is simply inapposite. These cases merely

discuss the *relationship* between the Jencks Act and *Brady* disclosure requirements; they do not address trial testimony at all.

grand jury's role to determine whether the defendants should be indicted. According to the district court, by intentionally keeping this information from the jury,[5] the government "usurped the function of the Grand Jury, caused fundamental unfairness to arise in the indicting process, and violated the defendants' constitutional rights to a fair Grand Jury hearing." *Isgro*, 751 F.Supp. at 851.

The problem with the district court's judgment is that this court has held that prosecutors simply have no duty to present exculpatory evidence to grand juries. *See Larrazolo*, 869 F.2d at 1359; *United States v. Al Mudarris*, 695 F.2d 1182, 1186 (9th Cir.) ("The prosecutor has no duty to present to the grand jury all matters bearing on the credibility of witnesses or any exculpatory evidence."), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983) (citing *United States v. Tham*, 665 F.2d 855, 862 (9th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982)). Most importantly, the Supreme Court, in a case decided after the district court rendered its decision in this case, has reaffirmed this rule. *See United States v. Williams*, — U.S. —, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

In *Williams*, the government charged and indicted defendant Williams with making false statements for the purpose of influencing a financial institution in violation of 18 U.S.C. § 1014. According to the indictment, Williams supplied several banks with false information that overstated the value of his assets and income. The prosecutors did not present to the grand jury evidence such as Williams' tax records and general ledgers tending to belie an attempt to mislead the banks, i.e., to prove his innocence. The district court held that this omission was sufficient basis to justify a dismissal of the indictment. In affirming the district court, the Tenth Circuit affirmed its rule that prosecutors have a duty to present "substantial exculpatory evidence" to the grand jury, and that their failure might under certain circumstances

justify the dismissal of an indictment. The Supreme Court reversed.

The Court rejected Williams' argument that the Tenth Circuit's rule was "a necessary means of assuring the constitutional right to the judgment 'of an independent and informed grand jury.'" *Williams*, — U.S. at —, 112 S.Ct. at 1744 (quoting *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962)). Focussing on the grand jury's role as an accusatory rather than adjudicatory body, the Court noted that the grand jury's role was only "to assess whether there is adequate basis for bringing a criminal charge," not to determine guilt or innocence. *Id.* — U.S. at —, 112 S.Ct. at 1736. Thus, the "suspect under investigation by the grand jury [has never] been thought to have a right to testify, *or to have exculpatory evidence presented.*" *Id.* (emphasis added). In short, the Court found that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with [the grand jury] system." *Id.*

We believe that *Williams* controls here. As in *Williams*, the defendants' constitutional argument in this case is that the grand jury was deprived of its ability to make an informed or independent decision by the prosecutor's failure to present exculpatory evidence. However, in fairly expansive language, *Williams* clearly rejects the idea that there exists a right to such "fair" or "objective" grand jury deliberations. *See also United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1394 (9th Cir.1983) ("[W]e disagree with [the district court] that the grand jury could not have returned an informed indictment because the prosecutor failed to introduce ... allegedly exculpatory evidence."), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984). Therefore, we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment.

b. *Supervisory Powers*

The district court also invoked its inherent supervisory power to dismiss the indict-

---

5. There seems to have been no doubt whatsoever in the district court's mind that the government was fully aware of DiRicco's trial testimo-

ny and intimately familiar with its contents. *Isgro*, 751 F.Supp. at 850.

ment because it found that in addition to usurping the role of the grand jury, the government had repeatedly denied to defense counsel and to the court the existence of any *Brady* material, had misrepresented the contents of the transcript when confronted with it, and had intended to keep the transcript from the defense as long as it could, possibly through trial. The court also cited the facts that the government prosecutors were intimately familiar with the trial transcript and only pretended not to know its contents, and that some time ago then-District Judge Rymer had dismissed an indictment for prosecutorial misconduct by these same Strike Force attorneys in a related case.

Although the district court was justifiably frustrated with the government prosecutors in this case, we simply do not find support in Supreme Court and Ninth Circuit case law for its decision to dismiss the indictment.

In dismissing the indictment on these grounds, the district court was apparently of the view that "[W]hile a constitutional analysis focuses on preserving fairness for the individual defendant and remedying any harm that has been done to his basic rights, the exercise of a court's inherent supervisory power serves two institutional purposes: deterring governmental misconduct and protecting the integrity of the judicial process." *Sears Roebuck*, 719 F.2d at 1394 (Norris, J., dissenting in part from the judgment). Under this view, dismissal of the indictment need not be tied to prejudice to the defendant.

In its recent jurisprudence, however, the Supreme Court has moved away from this view and toward a rule that a court should not use its supervisory powers to mete out punishment absent *prejudice* to a defendant. For example, in *United States v. Hasting*, 461 U.S. 499, 504–507, 103 S.Ct. 1974, 1977–80, 76 L.Ed.2d 96 (1983), the Court held that the Seventh Circuit could not reverse a conviction on the basis of prosecutorial comment on a defendant's silence without first considering whether such comments were prejudicial. The Court rejected the Seventh Circuit's reason-

ing that a reversal was warranted because although it had repeatedly warned local prosecutors that such comments were unconstitutional, its admonitions were being ignored. *Hastings* thus unequivocally rejects the idea that a court may sanction the government for its misconduct without considering first the actual prejudice suffered by the defendant.

■ Dismissal of an indictment with prejudice necessarily implicates separation-of-powers principles. *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991); *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985). This doctrine mandates judicial respect for the independence of the prosecutor. *Simpson*, 927 F.2d at 1091. Dismissal of an indictment with prejudice is the most severe sanction possible. Such dismissal exercised under the guise of "supervisory power" is impermissible absent "a clear basis in fact and law for doing so." *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.1977). In deciding whether to dismiss an indictment, a court must not only determine whether a defendant has suffered actual prejudice, it must also limit its consideration to those events that actually bear upon *the grand jury's decision to indict.* In *Bank of Nova Scotia*, 487 U.S. 250, 108 S.Ct. 2369, the Supreme Court affirmed the Tenth Circuit's reversal of a district court decision to dismiss an indictment. The Court agreed with the Tenth Circuit that the defendant had not been prejudiced when the prosecution had violated F.R.Crim.P. 6(e) by, *inter alia*, disclosing grand jury materials to IRS employees having civil tax enforcement responsibilities, failing to notify the court promptly of such disclosures, and disclosing to potential witnesses the names of the suspects, as well as F.R.Crim.P. 6(d) in allowing joint appearances of witnesses before the grand jury. Significantly, the Court explicitly approved the Tenth Circuit's holding that *post-indictment* prosecutorial misconduct should not be a factor in determining whether a defendant was prejudiced:

The Court of Appeals concluded that the District Court's findings of Sixth Amend-

ment postindictment violations were unrelated to the grand jury's independence and decisionmaking process because the alleged violations occurred *after* the indictment. We agree that it was improper for the District Court to cite such matters in dismissing the indictment. *Bank of Nova Scotia,* 487 U.S. at 258, 108 S.Ct. at 2375 (emphasis in original). Similarly, in *Spillone,* 879 F.2d 514, the defendant argued before the Ninth Circuit that a dismissal was proper in part because the prosecutor had delayed in giving defense counsel certain *Brady* material. We stated that "[t]o ask for a dismissal of the indictment on this ground is unwarranted," *id.* at 522, reasoning that the government's failure to comply with its duty to disclose exculpatory evidence at trial "was not sufficient to justify a dismissal of the indictment." *Id. See also Williams,* —— U.S. at ——, 112 S.Ct. at —— ("the supervisory power can be used to dismiss an indictment *because of misconduct before the grand jury*") (quoting *United States v. Mechanik,* 475 U.S. 66, 74, 106 S.Ct. 938, 943–44, 89 L.Ed.2d 50 (1986)) (emphasis added).

▇ In this case, the cumulative conduct complained of was not limited to the grand jury proceedings. The government's failure to turn over the trial transcript and its misrepresentations to the defense and the court regarding its existence and contents all took place after the indictment was obtained. The only conduct directly affecting the grand jury process was the government's failure to present DiRicco's previous testimony transcript to the jury. After

*Williams,* that failure is simply insufficient to sustain a dismissal of an otherwise valid indictment.[6]

▇ Even if all the misconduct could be considered, it is difficult to identify the prejudice to the defendants. As discussed above, there was no constitutional violation associated with the grand jury proceeding. As the government points out, with respect to the failure to turn over the *Brady* material, that material was in the end made available to the defense well before trial. In fact, should the indictment be reinstated, it is conceivable that the defendants could be acquitted at trial. Therefore, the defendants have suffered no prejudice, at least not in the sense the Supreme Court has defined "prejudice" in this context: "Under this standard, dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374.[7]

▇ Finally, the Supreme Court as well as the Ninth Circuit has repeatedly pointed out that dismissal of an indictment, particularly with prejudice, is a drastic measure. Accordingly, the Supreme Court has cautioned that when faced with prosecutorial misconduct, a court should "tailor[ ] relief appropriate in the circumstances." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). As

6. The defendants rely mainly on two cases, *United States v. Samango,* 607 F.2d 877 (9th Cir.1979) and *United States v. Basurto,* 497 F.2d 781 (9th Cir.1974). In *Basurto,* we held that an indictment was properly dismissed when the defendants had to stand trial on the basis of an indictment which the government knew was based in part on perjured testimony. In *Samango,* we approved a dismissal when the prosecutor gave the grand jury a transcript of misleading and highly prejudicial testimony without alerting it to the witness's credibility problems and pressured the jury through its foreperson to reach a decision in a very short period of time. Significantly, in both those cases, dismissal was based on misconduct confined to the grand jury proceeding and that improperly influenced the grand jury's decision to return an indictment. In this case, by contrast, although the failure to present the exculpatory evidence

may have influenced the grand jury's decision to indict, defendants have not suffered actual prejudice because they had no right to have such evidence presented.

7. At oral argument, defense counsel was asked to identify the actual prejudice defendants have suffered. Counsel responded that because the indictment was not dismissed immediately, defendants will be prejudiced by a reinstatement because they revealed trial strategy to the government during pretrial proceedings. We appreciate that this may indeed prove to be a disadvantage on remand. Nevertheless, prejudice of that sort cannot be said to have "substantially influenced the grand jury's decision to indict" and therefore does not fall within the meaning of "prejudice" as set out in *Bank of Nova Scotia.*

the Court observed in *Bank of Nova Scotia:*

> Errors of the kind alleged in these cases can be remedied adequately by means other than dismissal. For example, a knowing violation of [F.R.Crim.P] 6 may be punished as a contempt of court.... In addition, the court may direct a prosecutor to show cause why he should not be disciplined and request the bar or the Department of Justice to initiate disciplinary proceedings against him. The court may also chastise the prosecutor in a published opinion. Such remedies allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant.

487 U.S. at 263, 108 S.Ct. at 2378. In this case, the prosecutors' misconduct before the district court clearly rose to an intolerable level, particularly the misconduct of Mr. Lynch. Under the circumstances, we believe that the district court would be quite justified in pursuing alternative means of sanctioning the prosecutor, as indicated in *Bank of Nova Scotia.* The Attorney General should examine the conduct of Mr. Lynch to consider whether or not he should be subject to departmental discipline as well. Finally, we note that Mr. Lynch must also bear the serious sanction of published opinions chastising him by name. However, dismissing the indictment is simply an unwarranted "windfall" to the defendants.

## CONCLUSION

We are sympathetic to the district court's frustration with the government conduct in this case, in particular to its sense that it was unable to control the conduct in its courtroom. We join that court in condemning the government's behavior. However, under the Supreme Court's recent decision in *United States v. Williams,* and the definition of "prejudice" it has set out in *Bank of Nova Scotia,* we have no choice but to find that the district court erred in dismissing the indictment with prejudice. Accordingly, the district court's judgment is REVERSED.