SHWARTZ, Circuit Judge.
 

 The District Court barred a retrial of and dismissed the indictment against Defendant Raymont Wright with prejudice after two juries failed to reach a verdict. The Court did so relying on its inherent authority, but without finding that any misconduct had occurred or that Wright would suffer any prejudice beyond the general anxiety and inconvenience of facing a retrial. Under such circumstances, the Court lacked the inherent authority to bar the retrial and dismiss the indictment. Therefore, we will reverse the order dismissing the indictment and remand for further proceedings.
 

 I
 

 In December 2014, Wright was charged with being a felon in possession of a firearm, in violation of
 
 18 U.S.C. § 922
 
 (g)(1). He pleaded not guilty and proceeded to trial in May 2016. The jury was unable to reach a verdict. A second trial was held in March 2017, and that jury was also unable to reach a verdict.
 

 During both trials, the jury heard evidence from police officers about Wright's actions on July 24, 2014.
 
 [1]
 
 That evening, five Pittsburgh Police detectives were patrolling in two unmarked cars. Detectives Kennedy, Henson, and Baker were in the lead car, and Detectives Fallert and Goob were in the second car. Around 8:30 p.m. (when it was still daylight), Fallert and Goob saw a man, later identified as Wright, driving a car in the opposite direction well above the 25-mile-per-hour speed limit. The detectives turned around to follow Wright, and Wright sped up and turned onto a loop-shaped road. The detectives pursued Wright, who fled at a high speed and ran at least four stop signs. The lead car lost sight of Wright shortly thereafter and discontinued pursuit.
 

 Officers in the lead car then noticed skid marks suggesting that a car had intended but failed to make a left turn at the end of a street. Officers thereafter came upon Wright's car in a parking lot below. The car had gone through a fence, over a hillside, and into the lot. The car hit two unoccupied parked cars, its tires blew out, and its windows were down.
 

 Detectives Baker and Henson exited the vehicle at the top of the hill and remained where Wright's car broke through the fence, and Detective Kennedy drove his car down to the parking lot's entrance. Baker and Henson testified that they saw Wright search around the rear passenger seat of the car, back out of the vehicle with a black semi-automatic handgun in his right hand, and try to "rack the slide," which can insert or remove a round from the chamber. App. 118-19. They had their weapons drawn and told Wright to drop the gun. At first, Wright merely stepped back, but he eventually tossed the gun to the side, backed away, and lied on the ground. Pittsburgh police officer Elliott and his partner, who heard of the crash on the radio, were the first to reach Wright, and saw him lying on the ground with a handgun next to him. Henson stated that when he made it down to the parking lot, he heard Wright say to him, "Hey, big guy. You won this time or you won this round, something of that nature. He [Wright] said: You feel me? You won this time," which Henson understood to mean
 that he had just avoided a shootout or that he caught Wright after the pursuit. App. 125. Henson subsequently took custody of the gun and noticed the slide lever was bent, and when he straightened it, saw the gun was loaded with eight rounds, and one in the chamber.
 
 [2]
 

 At the close of the Government's case, Wright moved for a directed verdict, arguing that no reasonable juror could find beyond a reasonable doubt that Wright possessed the firearm. The District Court denied the motion because "the evidence does thus far demonstrate that a reasonable juror could most certainly find the Defendant guilty of the charge in this case." App. 171. Wright did not present a case.
 

 The jury deliberated for approximately five hours and then reported to the Court that it was deadlocked. After polling the jurors to confirm they were deadlocked and further deliberations would not bring them closer to a unanimous verdict, the District Court declared a mistrial.
 

 At Wright's March 2017 retrial, the Government presented substantially the same evidence. The Government also called Detective Kennedy and Lieutenant Palermo, who were at the scene after Wright was arrested, as well as experts who testified regarding the collection of DNA and fingerprint evidence from firearms to respond to Wright's argument at the first trial that investigators chose not to test the gun for forensic evidence in an effort to cover up that they had planted the gun at the scene.
 

 At the close of the Government's case, Wright again moved for a judgment of acquittal, which the Court denied because "there is sufficient evidence in the record to establish beyond a reasonable doubt that Mr. Wright possessed the firearm in the case," App. 650. Wright did not put on a case.
 

 The second jury deliberated for approximately three hours and then reported that it was hopelessly deadlocked. The Court polled the jury to confirm the deadlock and then dismissed the jury.
 
 [3]
 

 After the Government notified the Court that it intended to retry the case, the Court required the parties to brief "whether the Court, through an exercise of its inherent authority, should prohibit or permit a second re-trial in this case." App. 26. After considering the parties' arguments, the District Court dismissed the indictment with prejudice, holding that it "ha[d] the inherent authority, under some circumstances, to dismiss an indictment following multiple mistrials."
 
 United States v. Wright
 
 , Crim. A. No. 14-292,
 
 2017 WL 1179006
 
 , at *4 (W.D. Pa. Mar. 30, 2017). It reasoned that: (1) principles underlying the Double Jeopardy Clause also applied to a defendant facing a retrial after multiple mistrials,
 

 id.
 

 at *1-2 ; (2) other courts had dismissed indictments in similar circumstances,
 

 id.
 

 at *2-3 (citing
 
 United States v. Rossoff
 
 ,
 
 806 F.Supp. 200
 
 , 202-03 (C.D. Ill. 1992) ;
 
 United States v. Ingram
 
 ,
 
 412 F.Supp. 384
 
 , 385 (D.D.C. 1976) ;
 
 Sivels v. State
 
 ,
 
 741 N.E.2d 1197
 
 , 1201 (Ind. 2001) ;
 
 State v. Abbati
 
 ,
 
 99 N.J. 418
 
 ,
 
 493 A.2d 513
 
 , 517 (1985) ;
 

 State v. Moriwake
 
 ,
 
 65 Haw. 47
 
 ,
 
 647 P.2d 705
 
 , 712-13 (1982) ;
 
 State v. Witt
 
 ,
 
 572 S.W.2d 913
 
 , 917 (Tenn. 1978) ); (3) while Federal Rule of Criminal Procedure 31(b)(3) expressly allows the Government to retry a case after a mistrial, nothing in the rule "limits a court's inherent supervisory authority to dismiss an indictment in the interests of fundamental fairness,"
 

 id.
 

 at *4 ; and (4) if the Court were to adopt the Government's position that there are no limit to the number of times the Government can retry a defendant, it would be tantamount to a "type of jury shopping" that a court should not permit,
 
 id.
 
 at *4. The District Court also considered the factors set forth in
 
 Abbati
 
 ,
 
 493 A.2d at 521-22
 
 , and concluded that most factors supported dismissal.
 
 [4]
 

 The Government appeals.
 

 II
 
 [5]
 

 We review the District Court's order dismissing the indictment based on the Court's inherent power for abuse of discretion.
 
 [6]
 

 See
 

 United States v. Chapman
 
 ,
 
 524 F.3d 1073
 
 , 1084-88, 1090 (9th Cir. 2008) (reviewing dismissal of indictment for abuse of discretion);
 
 cf.
 

 Chambers v. NASCO, Inc.
 
 ,
 
 501 U.S. 32
 
 , 55,
 
 111 S.Ct. 2123
 
 ,
 
 115 L.Ed.2d 27
 
 (1991) (reviewing a court's imposition of sanctions under its inherent power for abuse of discretion);
 
 Gov't of the Virgin Islands v. Fahie
 
 ,
 
 419 F.3d 249
 
 , 258 (3d Cir. 2005) ("A trial court's remedy for a discovery violation under its supervisory powers is reviewed for abuse of discretion."). A district court abuses its discretion when it makes an
 errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact.
 
 McDowell v. Phila. Hous. Auth.
 
 ,
 
 423 F.3d 233
 
 , 238 (3d Cir. 2005).
 

 A
 

 Federal Rule of Criminal Procedure 31 allows the Government to retry a case if the court declares a mistrial after a jury announces it is unable to reach a verdict. Specifically, Rule 31(b)(3) provides: "[i]f the jury cannot agree on a verdict on one or more counts, the court may declare a mistrial on those counts. The government may retry any defendant on any count on which the jury could not agree." Fed. R. Crim. P. 31(b)(3). The word "may" means that the Government has the discretion to retry a case, and nothing in the rule or its commentary provides or even suggests a limit on the number of retrials it may conduct.
 
 See
 

 United States v. Wqas Khan
 
 , No. 2:10-CR-0175 KJM,
 
 2014 WL 1330681
 
 , at *2 (E.D. Cal. Apr. 1, 2014) ("Nothing suggests that multiple mistrials take a case out of the Rule's operation."),
 
 appeal dismissed
 
 , No. 14-10218 (9th Cir. July 9, 2014).
 
 [7]
 
 Moreover, there is nothing in the text that empowers
 a court to prohibit the Government from retrying a case.
 
 [8]
 

 B
 

 Apparently aware that Rule 31 did not provide it with a basis to preclude a retrial in these circumstances, the District Court concluded that it had the inherent authority to forbid the retrial and dismiss the indictment. The District Court erred.
 

 The exercise of inherent authority must satisfy two requirements: (1) it "must be a reasonable response to the problems and needs confronting the court's fair administration of justice," and (2) it "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute."
 
 Dietz v. Bouldin
 
 , --- U.S. ----,
 
 136 S.Ct. 1885
 
 , 1892,
 
 195 L.Ed.2d 161
 
 (2016) (citations and internal quotation marks omitted). We will examine each of these requirements in turn.
 

 1
 

 As to the first
 
 Dietz
 
 requirement, "[g]uided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress."
 
 United States v. Hasting
 
 ,
 
 461 U.S. 499
 
 , 505,
 
 103 S.Ct. 1974
 
 ,
 
 76 L.Ed.2d 96
 
 (1983) (internal quotation marks and citation omitted). Such rules must be imposed (1) "to implement a remedy for violation of recognized rights," (2) "to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury," and (3) "as a remedy designed to deter illegal conduct."
 

 Id.
 

 (citations omitted). Thus, a court may exercise its inherent authority only when it is necessary to address improper conduct and ensure respect for the proceedings.
 

 Under these principles, a court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice.
 
 See
 

 Bank of Nova Scotia v. United States
 
 ,
 
 487 U.S. 250
 
 , 254-56, 263,
 
 108 S.Ct. 2369
 
 ,
 
 101 L.Ed.2d 228
 
 (1988) ;
 
 Chapman
 
 ,
 
 524 F.3d at 1087
 
 (stating that "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice and where no lesser remedial action is available" (citations and internal quotation marks omitted) );
 
 United States v. Goodson
 
 ,
 
 204 F.3d 508
 
 , 514 (4th Cir. 2000) (observing that "a district court may not, in the management of its docket, exercise its discretion to dismiss an indictment with prejudice, either under Rule 48(b) or under its supervisory power, unless the violation caused prejudice to the
 defendant or posed a substantial threat thereof" (emphasis omitted) );
 
 United States v. Derrick
 
 ,
 
 163 F.3d 799
 
 , 808 (4th Cir. 1998) (holding that an indictment may not be dismissed for prosecutorial misconduct absent a showing that the misconduct prejudiced the defendants, and stating that "virtually every other circuit to consider the issue post-
 
 Hasting
 
 and
 
 Nova Scotia
 
 has also held that an indictment may not be dismissed based on prosecutorial misconduct, absent a showing of prejudice to the defendant");
 
 United States v. Van Engel
 
 ,
 
 15 F.3d 623
 
 , 631-32 (7th Cir. 1993) ("A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense ....");
 
 United States v. Tucker
 
 ,
 
 8 F.3d 673
 
 , 674 (9th Cir. 1993) ("[A] federal court may not exercise its supervisory authority to reverse a conviction or dismiss an indictment absent prejudice to the defendant.");
 
 United States v. Santana
 
 ,
 
 6 F.3d 1
 
 , 11 (1st Cir. 1993) ("[T]aken together,
 
 [
 

 United States v. ]Payner
 
 , [
 
 447 U.S. 727
 
 , 735,
 
 100 S.Ct. 2439
 
 ,
 
 65 L.Ed.2d 468
 
 (1980),]
 
 Hasting
 
 , and
 
 Bank of Nova Scotia
 
 form a trilogy admonishing federal courts to refrain from using the supervisory power to conform executive conduct to judicially preferred norms by dismissing charges, absent cognizable prejudice to a particular defendant.");
 
 United States v. Isgro
 
 ,
 
 974 F.2d 1091
 
 , 1094 (9th Cir. 1992) ("Before it may invoke this [supervisory] power [to dismiss an indictment], a court must first find that the defendant is actually prejudiced ...."),
 
 amended by
 

 43 F.3d 1480
 
 (9th Cir. 1994).
 

 In this case, there has been no misconduct. Indeed, the District Court noted that the Government performed diligently and professionally in both trials,
 
 Wright
 
 ,
 
 2017 WL 1179006
 
 , at *4, and found that the evidence was sufficient to prove beyond a reasonable doubt that Wright possessed the gun. The District Court nonetheless applied its own predictions about what another jury may do when presented with the same evidence, emphasized the need for finality, and opined that the effect of prosecution on the defendant precluded a proper prosecution from proceeding.
 
 See
 

 id.
 
 at *5-6. Invoking its own notions about the unfairness of requiring a defendant to face a retrial where the Government did not obtain a majority of the jurors' votes is an improper exercise of a court's supervisory power.
 
 United States v. Miller
 
 ,
 
 4 F.3d 792
 
 , 795 (9th Cir. 1993). Moreover, there is no prejudice to a defendant simply because he faces the anxiety and the normal stress of undergoing a trial.
 
 See
 

 United States v. Shepherd
 
 ,
 
 511 F.2d 119
 
 , 123 (5th Cir. 1975) ("[A]nxiety is present to some degree in virtually every case. Something more than the normal anxiety that accompanies a trial is necessary to show a degree of prejudice.");
 
 United States v. Clyburn
 
 , Crim. No. 89-0154 (JHG),
 
 1991 WL 45749
 
 , at *2 (D.D.C. Mar. 22, 1991) ("The only real harm alleged is the general unfairness to these defendants in having to go forward yet again with a lengthy trial, in their being 'ground down' by the several months' drain on their mental, emotional, and financial resources. A lack of such fairness, however, does not alone violate due process."). Rather, prejudice sufficient for the District Court to intervene in a proper prosecution based upon its inherent authority occurs only where the Government engages in actions that place a defendant at a disadvantage in addressing the charges. That sort of prejudice is absent in this case.
 

 Unless there is some constitutional basis, such as a due process violation, it makes sense to limit a court's authority to bar retrial to instances of prosecutorial misconduct and prejudice. First, it ensures that a judge's personal preferences about a
 case do not influence whether the case proceeds.
 
 See
 

 United States v. Santtini
 
 ,
 
 963 F.2d 585
 
 , 596 (3d Cir. 1992) ("The judiciary may not impose its personal and private notions of 'fairness' on law enforcement officials, but does have a limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution."). Second, as more fully discussed below, it guarantees that a court limits the Executive's decision to prosecute only where there is a constitutionally sound reason to do so.
 
 [9]
 
 This brings us to the second
 
 Dietz
 
 requirement.
 

 2
 

 The second
 
 Dietz
 
 requirement reminds a court that the exercise of its powers must be in accordance with the Constitution, statutes, and rules.
 
 136 S.Ct. at 1892
 
 . Beginning with the Constitution, a court must be mindful of its role in our tripartite form of government and the doctrine of separation of powers. Separation-of-powers principles limit a court's inherent authority. "Regardless of whether the supervisory power stems from the federal courts' inherent power to check intrusions by other branches of government or whether it is a form of specialized federal common law, the separation-of-powers principle imposes significant limits on it," and "[p]roper regard for judicial integrity does not justify a 'chancellor's foot veto' over activities of coequal branches of government."
 
 United States v. Gatto
 
 ,
 
 763 F.2d 1040
 
 , 1046 (9th Cir. 1985) (internal quotation marks omitted) (quoting
 
 United States v. Russell
 
 ,
 
 411 U.S. 423
 
 , 435,
 
 93 S.Ct. 1637
 
 ,
 
 36 L.Ed.2d 366
 
 (1973) ).
 

 In the criminal context, the Executive Branch has "broad discretion as to whom to prosecute," and this discretion "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."
 
 Wayte v. United States
 
 ,
 
 470 U.S. 598
 
 , 607-08,
 
 105 S.Ct. 1524
 
 ,
 
 84 L.Ed.2d 547
 
 (1985) (citation and internal quotation marks omitted). A court is not equipped to evaluate
 

 [s]uch factors as ... the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan .... Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All of these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.
 

 Id.
 
 ;
 
 see also
 

 In re Richards
 
 ,
 
 213 F.3d 773
 
 , 786 (3d Cir. 2000) (echoing similar sentiments with respect to Rule 48(a) dismissals). Thus, absent constitutional concerns, the decision to try or retry a case is at the discretion of the prosecutor.
 
 United States v. HSBC Bank USA, N.A.
 
 ,
 
 863 F.3d 125
 
 , 129, 137-38 (2d Cir. 2017) (stating that the court's "role is not to act as superprosecutors, second-guessing the legitimate exercise of core elements of prosecutorial discretion, but rather as neutral arbiters of the law" (citation and internal quotation marks omitted) );
 
 United States v. Raineri
 
 ,
 
 42 F.3d 36
 
 , 43 (1st Cir. 1994) ("[T]he choice to forego permanently a prosecution is ordinarily made by the executive branch.");
 
 Tucker
 
 ,
 
 8 F.3d at 676
 
 ("In maintaining order in our own house, we should not needlessly trample on the interest of the prosecutor and of the public in securing proper, lasting convictions.");
 
 Isgro
 
 ,
 
 974 F.2d at 1097
 
 (stating that the doctrine of separation of powers "mandates judicial respect for the independence of the prosecutor," and "[d]ismissal of an indictment with prejudice is the most severe sanction possible").
 
 [10]
 
 Accordingly, separation-of-powers principles preclude a court from terminating a prosecution absent misconduct and prejudice to the defendant.
 
 See
 

 Bank of Nova Scotia
 
 ,
 
 487 U.S. at 254-56, 263
 
 ,
 
 108 S.Ct. 2369
 
 ;
 
 Goodson
 
 ,
 
 204 F.3d at
 
 514 ;
 
 Tucker
 
 ,
 
 8 F.3d at
 
 674 ;
 
 Isgro
 
 ,
 
 974 F.2d at 1094
 
 .
 

 In short, a court's power to preclude a prosecution is limited by the separation of powers and, specifically, the Executive's law-enforcement and prosecutorial prerogative.
 
 See
 

 Wayte
 
 ,
 
 470 U.S. at 607-08
 
 ,
 
 105 S.Ct. 1524
 
 ;
 
 HSBC
 
 ,
 
 863 F.3d at
 
 137 ;
 
 In re Richards
 
 ,
 
 213 F.3d at
 
 786 ;
 
 Raineri
 
 ,
 
 42 F.3d at
 
 43 ;
 
 Tucker
 
 ,
 
 8 F.3d at
 
 676 ;
 
 Isgro
 
 ,
 
 974 F.2d at
 
 1095-97 ;
 
 Santtini
 
 ,
 
 963 F.2d at
 
 596 ;
 
 Gatto
 
 ,
 
 763 F.2d at 1046
 
 . Exercising inherent authority here to dismiss an indictment in the absence of misconduct and prejudice and based only on the fact that two juries could not reach a verdict intrudes on the Executive's domain and thereby violates the separation of powers.
 
 See, e.g.
 
 ,
 
 HSBC
 
 ,
 
 863 F.3d at
 
 138 ;
 
 Isgro
 
 ,
 
 974 F.2d 1091
 
 .
 

 Finally, there is no statute or procedural rule that permits a court to bar a retrial in the absence of misconduct and prejudice. First, a court may not dismiss an indictment as a method to manage its own affairs.
 
 [11]
 

 See
 

 Hasting
 
 ,
 
 461 U.S. at 505
 
 ,
 
 103 S.Ct. 1974
 
 . Second, a court's inherent
 power does not "include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure."
 
 Carlisle v. United States
 
 ,
 
 517 U.S. 416
 
 , 426,
 
 116 S.Ct. 1460
 
 ,
 
 134 L.Ed.2d 613
 
 (1996). Barring a retrial through the exercise of inherent authority circumvents the absence of power of the district court to dismiss an indictment in Rule 31(b). As stated above, courts have inherent authority to dismiss indictments, including, for instance, for prosecutorial misconduct if the defendant was prejudiced,
 
 Bank of Nova Scotia
 
 ,
 
 487 U.S. at 254-56, 263
 
 ,
 
 108 S.Ct. 2369
 
 , but neither the Supreme Court nor our Court has extended a court's inherent authority to allow the sua sponte dismissal of an indictment solely to preclude multiple mistrials following hung juries,
 
 see
 

 Chambers
 
 ,
 
 501 U.S. at 47
 
 ,
 
 111 S.Ct. 2123
 
 ;
 
 HSBC
 
 ,
 
 863 F.3d at 136
 
 .
 
 [12]
 

 Thus, the District Court abused its discretion in barring a retrial and dismissing the indictment.
 
 [13]
 

 III
 

 For the foregoing reasons, we will reverse and remand for further proceedings.
 

 The following facts are drawn largely from the evidence presented at the first trial.
 

 The parties stipulated Wright had been convicted of a qualifying felony, and an ATF Special Agent testified about the gun's interstate nexus.
 

 Wright asserted that in the first trial, jurors voted 8-4 for acquittal, and in the second trial, the jury was evenly split. The Government asserted that in the first trial, jurors voted 7-5 for acquittal, and in the second trial, voted 8-4 for conviction.
 
 See
 

 United States v. Wright
 
 , Crim. A. No. 14-292,
 
 2017 WL 1179006
 
 , at *5 (W.D. Pa. Mar. 30, 2017). While Wright does not explain how he obtained these numbers, the Government said it obtained them by speaking with the jurors.
 

 The Abbati factors are
 

 (1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney. The court must also give due weight to the prosecutor's decision to reprosecute, assessing the reasons for that decision, such as the gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions. Conversely, the court should accord careful consideration to the status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness.
 

 Wright
 
 ,
 
 2017 WL 1179006
 
 , at *4 (quoting
 
 Abbati
 
 ,
 
 493 A.2d at
 
 521-22 ). For the reasons set forth herein, we would not adopt
 
 Abbati
 
 , but even if we were to consider the
 
 Abbati
 
 factors, we would conclude that they do not support dismissal in this case.
 

 The District Court had jurisdiction pursuant to
 
 18 U.S.C. § 3231
 
 . We have jurisdiction pursuant to
 
 18 U.S.C. § 3731
 
 .
 

 The phrases "inherent power," "inherent authority," "supervisory power," and "supervisory authority" are all used to describe the basis for a court action seeking to maintain the integrity of the proceedings that is not directly tethered to a specific rule, statute, or constitutional provision.
 
 See, e.g.
 
 ,
 
 Carlisle v. United States
 
 ,
 
 517 U.S. 416
 
 , 426,
 
 116 S.Ct. 1460
 
 ,
 
 134 L.Ed.2d 613
 
 (1996) (inherent power);
 
 United States v. Williams
 
 ,
 
 504 U.S. 36
 
 , 46,
 
 112 S.Ct. 1735
 
 ,
 
 118 L.Ed.2d 352
 
 (1992) (supervisory power);
 
 Chambers v. NASCO, Inc.
 
 ,
 
 501 U.S. 32
 
 , 43,
 
 111 S.Ct. 2123
 
 ,
 
 115 L.Ed.2d 27
 
 (1991) (inherent power);
 
 Bank of Nova Scotia v. United States
 
 ,
 
 487 U.S. 250
 
 , 254-56, 263,
 
 108 S.Ct. 2369
 
 ,
 
 101 L.Ed.2d 228
 
 (1988) (supervisory authority);
 
 United States v. Hasting
 
 ,
 
 461 U.S. 499
 
 , 505,
 
 103 S.Ct. 1974
 
 ,
 
 76 L.Ed.2d 96
 
 (1983) (supervisory power);
 
 United States v. Payner
 
 ,
 
 447 U.S. 727
 
 , 733-36,
 
 100 S.Ct. 2439
 
 ,
 
 65 L.Ed.2d 468
 
 (1980) (supervisory power);
 
 United States v. Nobles
 
 ,
 
 422 U.S. 225
 
 , 231,
 
 95 S.Ct. 2160
 
 ,
 
 45 L.Ed.2d 141
 
 (1975) (inherent power).
 

 Even if we accepted the distinctions our dissenting colleague has drawn between inherent judicial powers, legislatively granted judicial powers, and supervisory powers, each category must operate within the constitutional framework, including the separation of powers.
 

 While Rule 31 does not limit the Government's authority to retry a case, a handful of district courts have dismissed indictments following a second hung jury, but those decisions are not persuasive. In
 
 Ingram
 
 , the district court dismissed the indictment sua sponte (without any initial objection by the Government) after two mistrials-in which jurors had voted 10-2 and 11-1 for acquittal, the defendant was jailed during the pendency of the trials, and "[t]he Government ha[d] no new proof; it simply want[ed] another chance."
 
 412 F.Supp. at 385
 
 . The court concluded that to permit a retrial would be "to ignore the reasonable doubt standard," and so "[t]he Court's intervention [was] required in the interest of justice."
 

 Id.
 

 at 386 (citing
 
 United States v. De Diego
 
 ,
 
 511 F.2d 818
 
 , 824 n.8 (D.C. Cir. 1975) ;
 
 De Diego
 
 ,
 
 511 F.2d at
 
 833 n.6 (McGowan, J., dissenting) ). The
 
 Ingram
 
 court, however, relied in part on the dissent in
 
 De Diego
 
 . Cases since
 
 Ingram
 
 have applied the
 
 De Diego
 
 majority's view concerning a court's limited authority to dismiss an indictment.
 
 See, e.g.
 
 ,
 
 United States v. Hall
 
 ,
 
 559 F.2d 1160
 
 , 1164-65 (9th Cir. 1977) (citing
 
 De Diego
 
 and reversing the district court's dismissal of the indictment where the district court found it would be "unconscionable" to retry to the defendant);
 
 United States v. Hudson
 
 ,
 
 545 F.2d 724
 
 , 724-26 (10th Cir. 1976) (discussing
 
 De Diego
 
 and its dissent and holding a district court does not have authority to sua sponte dismiss an indictment based on the defendant's poor health);
 
 United States v. Mussehl
 
 ,
 
 453 F.Supp. 1235
 
 , 1236 (D.N.D. 1978) (denying defendants' motion to dismiss the indictment based on alleged errors at trial, and citing
 
 De Diego
 
 for the proposition that "[t]he duty [to administer justice] encompasses the concept of review of the question whether the United States Attorney, in making his decision to prosecute, complied with the law, but does not allow the Court to question a United States Attorney's judgment decision to prosecute, when lawfully made").
 

 The District Court also relied on
 
 Rossoff
 
 , where the court denied the Government's motion to dismiss the indictment under Federal Rule of Criminal Procedure 48(a), but still dismissed the indictment with prejudice.
 
 806 F.Supp. at
 
 202-03 (citing
 
 Ingram
 
 ,
 
 412 F.Supp. at
 
 385-86 ). There had been two trials, and the Government sought to dismiss the indictment and refile the charges in a different judicial district.
 

 Id.
 

 The court determined it had authority to dismiss an indictment with prejudice if a retrial was "against the concept of fundamental fairness,"
 

 id.
 

 at 202 (citing
 
 Ingram
 
 ,
 
 412 F.Supp. 384
 
 ), and did so because, among other reasons, the defendant was in poor health, was under significant strain, and a majority of jurors at both trials found him not guilty,
 
 id.
 
 at 203.
 
 Rossoff
 
 , however, is distinguishable from Wright's case because in
 
 Rossoff
 
 , the Government sought to dismiss the indictment so that it could refile charges in a different judicial district, which caused the court to question the Government's good faith. In Wright's case, the District Court made no finding that the Government's desire to retry Wright was for an improper purpose.
 

 In addition, and significantly, neither
 
 Ingram
 
 nor
 
 Rossoff
 
 addressed the doctrine of separation of powers. Rather, each essentially relied on a general concept of fairness to the defendant in deciding to dismiss an indictment.
 
 See
 

 Rossoff
 
 ,
 
 806 F.Supp. at
 
 202 ;
 
 Ingram
 
 ,
 
 412 F.Supp. at 385-86
 
 . In this Circuit, however, "[t]he judiciary may not impose its personal and private notions of 'fairness' on law enforcement officials, but does have a limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution."
 
 United States v. Santtini
 
 ,
 
 963 F.2d 585
 
 , 596 (3d Cir. 1992) (citations omitted).
 

 Rule 31 differs from other Federal Rules of Criminal Procedure because it makes no mention of the court's authority. For instance, Rule 48(b) states that a court has authority to dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to the grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). There are other Rule-based grounds on which a district court could also dismiss an indictment, but each would be triggered by a motion, such as a motion to dismiss for failure to comply with Rule 16's discovery obligations if justice so requires, Fed. R. Crim. P. 16(d)(2)(D), or a motion asserting a defect in the indictment, Fed. R. Crim. P. 12(b)(3)(B).
 

 For these reasons, we find unpersuasive our dissenting colleague's reliance on
 
 Eash v. Riggins Trucking Inc.
 
 ,
 
 757 F.2d 557
 
 , 562 (3d Cir. 1985) (en banc), and particularly its observation that a court has the inherent power to resolve a case, as authority for allowing a court dismiss an indictment after successive hung juries. As a general matter, there is no doubt that a court has the authority to dismiss a case, but it may not simply end a case because it decides that it should not be tried again. Rather, as
 
 Bank of Nova Scotia
 
 ,
 
 Chapman
 
 , and their progeny make clear, the court must point to evidentiary deficiency, prejudicial misconduct, or a constitutional basis, such as double jeopardy or due process, to justify precluding a prosecution. If a court believed that the evidence was deficient, the prosecutor engaged in prejudicial misconduct, or a retrial would violate the constitution, then it has a basis to preclude a retrial. Requiring such reasons for barring a retrial ensures that the ruling is not based on a court's own personal sense of whether a case is worthy of prosecution.
 

 Several state courts have also refused to recognize any inherent authority to dismiss an indictment to prevent a retrial.
 
 See
 

 People v. Sierb
 
 ,
 
 456 Mich. 519
 
 ,
 
 581 N.W.2d 219
 
 , 225 (1998) ;
 
 State v. Johnson
 
 ,
 
 821 S.W.2d 609
 
 , 613 (Tex. Crim. App. 1991) (en banc);
 
 State v. Sherrod
 
 ,
 
 383 So.2d 752
 
 , 753 (Fla. Dist. Ct. App. 1980). Other states, however, have recognized a court's authority to dismiss an indictment sua sponte.
 
 See
 

 State v. Sauve
 
 ,
 
 164 Vt. 134
 
 ,
 
 666 A.2d 1164
 
 , 1167-68, 1167 n.1 (1995) ;
 
 Abbati
 
 ,
 
 493 A.2d at
 
 521 ;
 
 Moriwake
 
 ,
 
 647 P.2d at
 
 712 ;
 
 Witt
 
 ,
 
 572 S.W.2d at 917
 
 . These latter cases are unpersuasive because they give too little weight to the separation of powers, a crucial constitutional principle in the federal system.
 

 In
 
 Chambers
 
 , for example, the Supreme Court recognized a court's authority to impose silence, respect, and decorum based on its authority to manage its own affairs.
 
 501 U.S. at 43
 
 ,
 
 111 S.Ct. 2123
 
 . This authority has been exercised by controlling admission to the bar and disciplining its members; punishing for contempt, which penalizes disruption to proceedings and disobedience to court orders; disallowing fraud on the courts; ensuring the proceedings move forward; and curtailing litigation abuses.
 

 Id.
 

 at 43-45
 
 ,
 
 111 S.Ct. 2123
 
 ;
 
 see also
 

 Link v. Wabash R.R. Co.
 
 ,
 
 370 U.S. 626
 
 , 629-31,
 
 82 S.Ct. 1386
 
 ,
 
 8 L.Ed.2d 734
 
 (1962) (noting a court can dismiss a civil case for failure to prosecute to prevent delays and court congestion as part of a court's inherent power to manage its own affairs).
 
 Chambers
 
 and
 
 Link
 
 address how a court may manage its own proceedings, but they do not address how the court must also account for issues of separation of powers in the context of a criminal case.
 

 Most cases concerning a court's inherent authority have arisen in the civil context.
 
 See
 

 Dietz
 
 ,
 
 136 S.Ct. at 1893
 
 (noting a court's inherent powers to rescind a jury discharge order and recall a jury);
 
 Chambers
 
 ,
 
 501 U.S. at 44, 55-58
 
 ,
 
 111 S.Ct. 2123
 
 (recognizing a court's authority to vacate a judgment upon proof that a fraud was perpetrated on the court, and, in particular, to assess as a sanction the entire amount of the opposing party's attorney's fees);
 
 Link
 
 ,
 
 370 U.S. at 629-31
 
 ,
 
 82 S.Ct. 1386
 
 (authority to dismiss a civil case sua sponte for failure to prosecute);
 
 Gulf Oil Corp. v. Gilbert
 
 ,
 
 330 U.S. 501
 
 , 507-08,
 
 67 S.Ct. 839
 
 ,
 
 91 L.Ed. 1055
 
 (1947) (dismissing an action based on the doctrine of forum non conveniens).
 
 See generally
 

 Dietz
 
 ,
 
 136 S.Ct. at
 
 1892-93 (citing cases involving the scope of a district court's inherent power);
 
 Eash
 
 ,
 
 757 F.2d at 561-64
 
 (same).
 

 There are other circumstances in which district courts lack the inherent authority to act, and most of those situations arise in the criminal context.
 
 See, e.g.
 
 ,
 
 Carlisle
 
 ,
 
 517 U.S. at 433
 
 ,
 
 116 S.Ct. 1460
 
 (holding that a court does not have authority to grant a post-verdict motion for judgment of acquittal, filed one day outside the time limit under Rule 29(e) );
 
 Williams
 
 ,
 
 504 U.S. at 45-50, 55
 
 ,
 
 112 S.Ct. 1735
 
 (holding that a district court does not have inherent authority to dismiss an indictment because the Government failed to disclose to the grand jury substantial exculpatory evidence; "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such 'supervisory' judicial authority exists");
 
 HSBC
 
 ,
 
 863 F.3d at 129, 135-37
 
 (holding that the district court violated separation-of-powers principles by sua sponte invoking its supervisory power to oversee the government's entry into and implementation of a deferred prosecution agreement).
 

 Our dissenting colleague says that our approach deprives the court from taking action "when warranted to protect the institutional integrity of the judiciary." Dissent at 377. We disagree. This approach recognizes a court's role in our tripartite system of government and ensures that a court intercedes when proceeding would violate the Constitution. Furthermore, our approach does not preclude a court from ending a case where the evidence is insufficient or the conduct of the prosecution is improper.